# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

---

### THE FAIRBURY UNION AGRICULTURAL BOARD

#### *v.*

### EDGAR P. HOLLY *ex rel.*

*Opinion filed November 1, 1897.*

1. DEDICATION—*where there is actual dedication, owner's motives are unimportant.* Where there is an intention by the owner to dedicate land to the public and an act of dedication by him, upon acceptance by the public the easement becomes perfect and irrevocable, whatever may have been the personal motives of the owner in making the dedication.

2. SAME—*where road lies outside corporate limits no particular acts required to show acceptance.* Where a road dedicated to the public lies outside the limits of a municipality no particular acts are required by law to constitute public acceptance, and proof that it is traveled, recognized and worked upon as a public highway will raise the presumption of acceptance.

3. SAME—*what sufficient to show public acceptance of alley.* Proof that an alley lying outside the limits of a municipality but dedicated to the public was traveled for several years, without obstruction, by all persons going that way, that there was a well-defined track its entire length and that repairs were made thereon by public authorities, is sufficient to show public acceptance of the dedication.

4. SAME—*public acceptance of road not confined to particular portions repaired.* Public acceptance of a road consisting of a single strip

of land, evidenced in part by the acts of public authorities in making repairs, will not be confined to the particular portions repaired but will include the entire strip.

5. SAME—*temporary obstructions by trespassers claiming no right will not show public abandonment.* Temporary obstructions placed in an alley by trespassers claiming no right to obstruct the way or reclaim the land from the public, will not, of themselves, show an abandonment by the public of its rights.

6. MASTERS IN CHANCERY—*report of master in chancery is simply advisory.* In chancery cases, generally, the facts are found by the court, and the report of the master, while *prima facie* correct, is simply advisory, and does not have the same force as a verdict of a jury in suits at law.

APPEAL from the Circuit Court of Livingston county; the Hon. C. R. STARR, Judge, presiding.

C. F. H. CARRITHERS, and GEORGE W. PATTON, for appellant:

To make a sufficient dedication the owner of the soil must devote the right of way to public use, and it must be accepted and appropriated by the public to that use. When a dedication is relied on to establish that right, proof of the dedication and acceptance by the public must be clear and unequivocal. *Chicago* v. *Drexel,* 141 Ill. 105; *Trustees* v. *Walsh,* 57 id. 63; *Ottawa* v. *Yentzer,* 160 id. 517; *Grube* v. *Nichols,* 36 id. 92.

There can be no complete or irrevocable dedication until there is acceptance by the public. *Winnetka* v. *Prouty,* 107 Ill. 217; *Chicago* v. *Drexel,* 141 id. 89.

As acceptance fastens a burden upon the public, it must be proven by clear and positive evidence. *Littler* v. *Lincoln,* 106 Ill. 369; *Chicago* v. *Drexel,* 141 id. 89.

The evidence of an acceptance of a common law dedication by the proper authorities must be clear and satisfactory. An acceptance of a part offered for public purposes is not an acceptance of the whole. A dedication before acceptance is a mere offer, which the owner may revoke at any time before acceptance; but his conveyance of land so offered for a street or highway before

acceptance, is, in law, a revocation of the offer to dedi-
cate.   *Chicago* v. *Drexel,* 141 Ill. 89.

EDGAR P. HOLLY, *pro se,* HERBERT POWELL, and R. S.
MCILDUFF, for appellees:

To constitute a dedication of land to a public use there
must first be an intention to do it on the part of the
owner,—and this must be unequivocally and satisfacto-
rily proved.   But it may be manifested by writing, by dec-
laration or by acts.   Dedications have been established
in every conceivable way by which the intention could
be manifested.   Washburn on Easements,(4th ed.) 209.

Whatever evidences a purpose on the part of a propri-
etor of lands to set off certain parts thereof for the use
of the public will be sufficient to evidence an intention
to dedicate to such use.   *Marsh* v. *Fairbury,* 163 Ill. 406.

Roads and streets may be established by prescription,
as well as by dedication and legislative authority.   Elliott
on Roads and Streets, 133.

The existence of a highway by prescription is gener-
ally proved by the parol evidence of witnesses that the
road in question has been known and used as a highway
or road common to all the people, for the necessary pe-
riod of prescription.   Elliott on Roads and Streets, 138.

A dedication of a way, although not accepted by the
public authorities, is conclusive on the owner of the soil,
and estops him from denying the right of the public to
use it, so long as the dedication is not withdrawn.   *Dan-
forth* v. *Durell,* 8 Allen, 244.

When there has been an acceptance of either an ex-
press or an implied common law dedication the grant is
irrevocable, and binds not only the grantor, but his gran-
tees and all in privity with him and them.   Elliott on
Roads and Streets, 92; Washburn on Easements, 218, 139.

If the use by the owner of the fee is consistent with
the claim asserted by the public it will not impair the
public right.   Elliott on Roads and Streets, 137, note 5.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The State's attorney of Livingston county filed the bill in this case, on the relation of certain citizens of the town of Fairbury, in that county, against appellant and others, to enjoin them from further obstructing an alleged alley adjoining Patton's addition to said town on the south, and to compel the removal therefrom of certain fences and buildings erected by appellant as part of its fair grounds. The answers denied the existence of the alleged public alley. The cause was referred to the master in chancery, who took the testimony and reported that the alley claimed was not a public highway, and recommended that the preliminary injunction be dissolved and the bill dismissed. The case was heard on exceptions by appellees to this report, the exceptions were sustained, the injunction was made perpetual, and the fences and buildings on the alley were ordered to be removed and the alley restored to public use.

Appellant's counsel insist that the court was not justified in sustaining exceptions to the master's report and setting aside his findings of fact, and press the point that such findings are entitled to the same weight as the verdict of a jury. This court has never adopted the rule that a master's report is to be given the same effect as the verdict of a jury in a case where the parties have the right to have issues of fact determined by jury. In chancery cases, generally, the facts are found by the court, and the master's report, while *prima facie* correct, is of an advisory nature. If the master in fact has seen the witnesses and observed their demeanor while testifying, due weight should be given from the advantage derived therefrom in judging of credibility; but if he has only seen the witnesses to administer oaths to them, and their testimony has been taken by a stenographer out of his hearing, he has no such advantage, nor has he so far as

he considers depositions taken elsewhere or other evidence not produced orally before him.

A dedication of the alley by the owner of the fee was claimed, and on that question there was practically no dispute about the facts, which were as follows: Caleb L. Patton owned a farm adjoining the town of Fairbury on the south. In February, 1864, he platted an addition to the town on the north part of his farm. The streets in this addition running north and south were numbered First, Second, Third, Fourth, Fifth, Sixth and Seventh, commencing on the west side of the addition. There was no street or alley connecting the south ends of these streets, but each one ended at the north line of the remaining farm lands. After laying out the addition he said that he would lay an alley through there, and he measured off twenty feet in width for that purpose the entire length of the addition and set stakes to mark the south line. The addition was then in meadow included with the farm, and so remained until the fall of 1864, when he sold the farm to Americus L. Pogue, and told Pogue that he had left the strip out there for a road or street. He said to Pogue, "If I make this deal I have promised the people I would leave a strip." Pogue, with the intention of carrying out Patton's purpose, removed the old fence from the north side of the addition, and reset it, with additional material, on the south line of the alley, leaving the strip outside for a road. A hedge was planted inside of the fence and close to it, which grew up and made a hedge fence when the boards were finally taken away. In selling lots in the addition Pogue told the people that there would be a road through there. He afterwards subdivided the lands south of the alley into acre lots, and told the surveyor who laid it out about the roadway. He did not intend that it should be included in the survey of the acre lots, but the surveyor said that was the correct way to do and the roadway was therefore included in the survey. This was proper, since the fee was in Pogue,

although burdened with the public easement. Pogue sold different acre lots thus surveyed, and finally, December 19, 1868, sold most of them to I. P. McDowell. He told McDowell that the strip was designed for a street, and they both understood and considered that it was a street. It was then an open way through which people rode and drove. McDowell owned and occupied the premises so purchased until appellant was organized, in 1876, when he sold them to it for its fair grounds. In that summer appellant built a board fence eight feet high on the south line of the alley, leaving it outside, as before. At the west end of the alley Deacon Shepard, who did not own or claim to own the fee but owned property in block 7 of the addition, had extended his fence across it and used it for stacking hay and for private purposes,—as some witnesses thought, for one year, while others thought it was longer. When appellant bought from McDowell and put up its fair ground fence, it required Shepard to remove his cross-fence, which he did, so as to leave out a strip for public use. In 1889 appellant acquired title to the south two hundred feet of block 7 in the addition across the alley from the fair grounds, and during that summer, or the next one of 1890, extended its fences across the alley, closing it between First and Second streets and including it in the fair grounds. This was the first act of obstruction or interference with the public easement by any owner of the fee in the land upon which the alley was located since it was first turned out to the public, about twenty-five years before.

It was unequivocally and satisfactorily proved that the owner of the premises intended to, and did by declarations and acts, set apart the strip in question for the benefit of the public and dedicate it to public use. The evidence showed that when Patton formed the intention of dedicating the strip, he gave as one reason that if stock got out of the stables they would get into his grain if there was no alley there, and it appears that both he

and Pogue expected to gain some benefit by separating the farm from the addition with this alley and keeping stock off from the farm. Counsel for appellant attach much importance to this fact as showing this alley was for a private purpose, merely; but whatever personal interest united with other objects, there can be no question of the intention to dedicate or of the dedication to public use. The fact that they or either of them wanted a public alley to keep the town people from uniting their fences with the farm fence, or that the open way for the public would be of individual advantage, could make no difference.

Whenever there is an intention to dedicate, and acts of dedication by the owner and acceptance by the public, the public easement becomes perfect and the dedication irrevocable. There must be some evidence of an adoption by the public, such as user, or some other act indicating acceptance by those authorized in such matters to represent the public. (*Littler* v. *City of Lincoln*, 106 Ill. 353.) But if the alley was accepted the dedication became complete, and no specific length of possession by the public was required. (*Rees* v. *City of Chicago*, 38 Ill. 322; *City of Chicago* v. *Wright*, 69 id. 318.) All the facts are admissible in evidence, and what will amount to an acceptance depends upon the circumstances and conditions. Where a road is outside of a municipal corporation, as this one is, no particular acts are required by the law to constitute an acceptance. Where it is traveled, recognized and worked upon as a highway a presumption of acceptance arises, and where no repairs are needed, use by the public sufficiently long and general to evidence an acceptance will be sufficient. (*Town of Rutland* v. *Town of Dayton*, 60 Ill. 58.)

The evidence is clear and conclusive that this alley was traveled by the public who had any occasion to go that way, for some years without any obstruction, and there was a well-defined track its entire length. The town laid tile to drain a low place in the alley, and the high-

way commissioners paid ten dollars of the expenses and the corporation of Fairbury paid ten dollars. The pathmaster hauled stone and stoned the road where needed, cinders were hauled on the east end of it, and a culvert was put in by the public authorities. Aside from this work, nothing was needed except to clean up the brush and cans thrown in the alley and mow the weeds. During the annual fair the way was used by a great many people, and the town of Fairbury paid for cleaning it up and gathering the cans and brush at such times, although it was outside of the corporation.

We are satisfied that there was an acceptance of the alley by the public aside from what the corporation of Fairbury did, and upon such acceptance the public right became complete, so that no subsequent obstruction or interference would destroy it unless continued for such length of time as to justify the conclusion that the way had been abandoned. A part of the alley has never been obstructed but has always been in use by the public. The part in question in this suit between appellees and the appellant and others was south of blocks 7, 8 and 9 of the addition. The appeal concerns only the portion obstructed by appellant, and in its behalf it is argued that there was only an acceptance of those parts of the alley where work was done by putting in the culvert and tile and filling the road, which was on another part. The road was a single, direct strip, and the public could not be required to make repairs where not needed, for the purpose of accepting the whole. The acceptance cannot be confined to the particular spots where the work was done, and the public be deprived of the remainder. There was no obstruction from which it could be inferred that the alley had been abandoned by the public. The only interference with the public right was by trespassers who claimed no right to obstruct the way or to reclaim the land from the public. South of block 8 the alley was obstructed by Edwin W. Mahoney, who obtained permission

both from the commissioners of highways and the appellant to enclose it and pasture his cow in it. The president of appellant gave the permission provided Mahoney would fix it so it could be opened to the public at any time, and the commissioners agreed upon the same condition. Mahoney owned adjoining premises in the addition, and under the agreement put fences across the alley, but opened it at fair times and on other public occasions when it was used and traveled by a great many people. Deacon Shepard did not dispute the public right, but removed his fences when appellant required him to do so. The obstructions by Shepard and Mahoney, and any other temporary obstructions, were of the same character. They were neither attempts to recall the dedication nor sufficient to show an abandonment of the public right.

For the reasons given we think the court was right in sustaining the exceptions, and the decree is affirmed.

*Decree affirmed.*