(No. 27564.—

Thomas McCue, Commissioner of Highways, Appellant,
vs. Kathryn E. Berge, Appellee.

*Opinion filed January 18, 1944.*

SHELDON & BROWN, of Sterling, for appellant.

ROBERT W. BESSE, and KENNARD J. BESSE, of Sterling, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

September 25, 1942, the plaintiff, Thomas McCue, commissioner of highways of the town of Sterling, filed his complaint in the circuit court of Whiteside county against the defendants, Kathryn E. Berge and her father, William F. Berge. Plaintiff alleged that in 1940, he succeeded his father as commissioner of highways; that for more than forty years the east forty feet of lot 1 in the southwest quarter of section 20, township 21 north, range 7, in Whiteside county, from the south line north 5.97 chains, and the east twenty feet north thereof had been reserved for, improved and used extensively as a public road; that although having no right or title, defendants had assumed to exercise and assert a claim of ownership or control over the strip, constituting one of the public roads of the town of Sterling, and had placed obstructions in the road which interfered with public travel and with the maintenance and improvement of the road and were a menace to the safety of those who lawfully used this public road, and that he had been required to remove some of the obstructions. A decree was sought enjoining defendants from asserting any title to the public road, from obstructing it, from in any

manner impairing or damaging the road and from interfering with plaintiff in its repair, maintenance or widening. Defendants answered, denying the material allegations of the complaint. As special defenses, defendants averred that there had been no acceptance by the public or any other qualified authority of the entire proposed dedication; that only a narrow strip of land, approximately sixteen feet in width, had ever been used for a public street; that all the other land had been used by Kathryn E. Berge and her predecessors in title as a part of their property; that the deed of 1936 from the Martins' estates by which she acquired title to all of lot 1, except the north 894 feet, contained no reservations; that by their quitclaim deed, in 1942, William H. Stanley and his wife conveyed to Kathryn E. Berge all right, title and interest in lot 1 which they had by virtue of a prior reservation in their deed to Margaret C. Hoover; that Kathryn E. Berge owns in fee simple the land described in the complaint, and that plaintiff has no right or interest in the title which he seeks to quiet in himself, as commissioner of highways. William F. Berge died during the progress of the trial. After hearing considerable evidence, the chancellor found the equities to be with Kathryn E. Berge, denied the injunction sought by plaintiff and dismissed his complaint. Plaintiff prosecuted an appeal to the Appellate Court for the Second District. A freehold being necessarily involved, (*Lang* v. *Dupuis,* 382 Ill. 101,) the cause was transferred to this court. *McCue* v. *Berge,* 320 Ill. App. 229.

November 7, 1908, David L. and John W. Martin, by warranty deed, conveyed lot 1 to William H. Stanley, reserving therefrom a strip of land twenty feet in width along and adjacent to the east line of the lot, "for the purposes of a public street." March 1, 1910, Stanley conveyed the same property, by warranty deed, to Margaret C. Hoover, excepting from the conveyance a strip forty feet in width along the east line extending north

from the south line 5.97 chains, "the west 30 feet of said east 40 feet being reserved for a public street," and also reserving a twenty-foot strip along the east line of lot 1 north of the forty-foot strip "for a public street." March 1, 1921, Margaret C. Hoover, conveyed to David L. and John W. Martin, by warranty deed containing the same exceptions and reservations as were contained in the deed from Stanley to her. April 26, 1936, Carl E. Sheldon, as executor of the will and trustee of the estate of John W. Martin, deceased, and Jacob Cantlin, as executor of the will and trustee of the estate of David L. Martin, deceased, by trustees' deed, conveyed to Kathryn E. Berge all of lot 1 except the north 894 feet. The total length of lot 1 from north to south is 1328 feet. By a quitclaim deed, dated June 27, 1942, William H. Stanley and Hannah M. Stanley, his wife, conveyed to Katheryn E. Berge all their interest in the strip forty feet wide, 5.97 chains long, excepted from their deed of March 1, 1910, to Margaret C. Hoover.

Lot 1 is located immediately north of West Fourth street, commonly known as Lincoln highway. Its eastern edge is also the center or half-section line of section 20. To the east and north of this property, three subdivisions have been developed. West Sterling, shown by a plat recorded October 22, 1892, is located directly east, extending north from West Fourth street to West Eighth street. William F. Pitney's subdivision, shown by a plat recorded June 15, 1937, lies directly north of the Berge property west of West Sterling. West Park subdivision, shown by another plat recorded July 22, 1937, is directly north of West Sterling. The strip of roadway in controversy, lying at the east side of lot 1, extends from West Fourth street on the south and continues north into Dillon avenue.

Plaintiff, Thomas McCue, in May, 1940, succeeded his father as commissioner of highways. He testified that twenty-two to twenty-five years previously, he assisted his

father when the latter commenced improving the road with cinders and gravel, from the highway south of defendants' property north to Fifth street; that, as highway commissioner for the past three years, he had caused cinders and gravel to be installed, and the road oiled, and that, during this entire period, the public had traveled the street generally and more extensively as the years passed. He also testified to a gradual increase over the years in the building of homes both on the east side of Dillon avenue in West Sterling subdivision and on its west side in Pitney's subdivision. He further testified to a course of conduct inaugurated by defendant William F. Berge commencing with his entry upon the premises, whereby obstructions were placed so as to gradually encroach farther and farther east upon the improved or traveled portion of this roadway; that, at first, these consisted of small stones and pipes, placed three or four feet east of the west line of the roadway on the cindered portion, the pipes being allowed to extend about six inches from the ground, causing disrepair of two road-grading machines; that despite the removal of these obstructions by his father on at least two occasions, Berge persisted in his campaign of encroachment; that this same procedure continued when he, plaintiff, took office in 1940, heavy iron stakes and posts being installed about three feet east on the traveled track, obstructing travel, and that removal resulted in their replacement shortly thereafter by Berge with the present iron pipes, located farther east than the original line of stones. According to McCue, the road, at the south, was twenty feet wide. He added that a fence enclosing a garden on the north end of Berge's property was moved by Berge ten or fifteen feet east of its original location; that the space not used as a road was mowed back to the fence line; that the part not now improved with cinders and oil was driven over, and could have been used as a road, and

that, at the present time, the road extends to the lawn, but there are cinders beyond the lawn not sodded over.

Seven witnesses, long resident in the community, corroborated plaintiff's testimony as to the existence of a traveled roadway along the east side of lot 1, its extensive use by the public, and its constant improvement with cinders, gravel and oil by plaintiff and his father, as highway commissioner. Their testimony also tends to show the progressively increased use by the public of the roadway, owing to the growth of the West Sterling and Pitney subdivisions. Grace Koser testified that there are approximately thirty residences on both sides of Dillon avenue. There was also testimony as to the use of the roadway as a part of a bus route, one witness stating the bus company had, for the past year, maintained a half-hourly schedule. The testimony of these witnesses is not entirely in accord as to the actual width of the improved roadway. Two stated that prior to being obstructed by Berge, the road was sufficiently wide to accommodate two vehicles, side by side. Several others testified that the traveled portion was not then wide enough for two vehicles to pass, one being required to go upon the Berge lawn, and that passage was rendered even more difficult after Berge placed the stones and other obstructions. One stated that until obstructed by Berge, there was nothing to prevent a vehicle from "going over to the west side of the forty feet," if necessary. J. A. Shepard testified that, about five years previously, Berge built a barbed-wire fence out into the road toward the north end of his land, which he, as an employee of the former highway commissioner, removed. William L. Martin testified that the roadway was practically a one-way drive, extending probably about sixteen feet from the east side of the property.

Four photographs, introduced in evidence as defendants' exhibits A, B, C and D, show views of the roadway to

the north from Lincoln highway, and from north to south. Defendants' exhibit F, a plat of Martins' estates subdivision, filed for record September 17, 1934, shows the surrounding property, including the Berge land.

William F. Berge, called as a witness by plaintiff under section 60 of the Civil Practice Act, (Ill. Rev. Stat. 1943, chap. 110, par. 184,) testified that since he occupied the premises, there had been a fence at the north end, about one third the length of the property, four feet west of the section line at its north end and six feet west at its south end; that in addition to, and south of, the fence, he placed some rocks, brick and mortar in the east forty feet of lot 1; that, in 1937, he first installed four pipes along the west side of the traveled path, at the edge of his lawn, "between 16 and 18 feet from the east line;" that these pipes remained in the ground until several months prior to the hearing, when, together with the stones and bricks, they were removed by the present commissioner, and that, in order to prevent driving over the space, he installed the present three stakes at the point to which the sod had been removed, about 23½ feet from the east line of the property. From the photographs in evidence, the present location of the fence posts on Berge's property is not readily discernible. Owing to injuries, defendant William F. Berge was unable to appear in his own behalf. It was stipulated that if called, he would testify that from the half-section line to the west bank of the roadway at the south end, the distance is eighteen feet; that it is fifteen and one-half feet directly across from the largest tree shown in exhibit A on the east side of the roadway to the south stake on the west side, and that the distance from the west bank to the tree on the west side of the roadway is six feet. It was further stipulated that Berge would testify that plaintiff and his employees have removed approximately three feet of sod from the east edge of his lawn, at the south end, and two and one-half feet of lawn

toward the north; that, during the incumbency of plaintiff's predecessor, he, Berge, placed stones along the east edge of his lawn which were not removed by the then commissioner, and that from 1934, when he moved on the premises, until 1937, no grading or other work except hauling cinders was performed by the highway commissioner. He denied placing a fence across the roadway, as testified by Shepard. The parties also stipulated Berge would testify that when Katheryn E. Berge purchased the property, she received an abstract of title which included a plat, exhibit F, relied upon by her in making the purchase. It is agreed that the abstract also included references to the deeds executed in 1908, 1910 and 1921 from the Martins to Stanley, from Stanley to Hoover, and from Hoover to the Martins, respectively, together with the specific reservations and exceptions contained in the deeds as to the roadway. Finally, it was stipulated that Berge would testify that from 1934 to 1937 the majority of automobiles entering this roadway from Lincoln highway did not belong to the public in general, and that the occupants of these cars used it merely as a private path to his residence.

A statutory dedication is not claimed. At most, only a common-law dedication is involved. The general rules governing the creation of a common-law dedication are well settled. No particular form is required. It may be by grant or other written instrument, or it may be evidenced by acts and declarations without writing. Any act on the part of the dedicator evincing intention to dedicate is sufficient. (*Hooper* v. *Haas*, 332 Ill. 561.) The requisites of a common-law dedication are: (1) an intention of the owner to donate the land to public use; (2) an acceptance by the public, and (3) clear, satisfactory and unequivocal proof of these facts. (*Kennedy* v. *Town of Normal*, 359 Ill. 306.) Acceptance by municipalities may be manifested by the affirmative act of taking possession, or by general use by the public for a considerable period

of time. Where a dedication is very beneficial or greatly convenient or necessary to the public, an acceptance may be implied from slight circumstances. (*Trustees of Schools* v. *Dassow,* 321 Ill. 346; *Alden Coal Co.* v. *Challis,* 200 Ill. 222.) Where a road is beyond the territorial limits of a municipal corporation, as here, no particular acts are required to constitute an acceptance. Where it is traveled, recognized and worked upon as a highway, a presumption of acceptance arises; and where no repairs are needed, use by the public sufficiently long and general to evidence an acceptance will be sufficient. *Fairbury Union Agricultural Board* v. *Holly,* 169 Ill. 9.

A common-law offer of dedication is admitted, and proof of acceptance of the offer of dedication is conceded to the extent, at least, of the east twenty-feet of the forty-foot strip. The issue between the parties, therefore, is whether there has been an acceptance of the remaining twenty feet. Plaintiff contends that no use or improvement of the entire width or length of the roadway is necessary to constitute an acceptance, and that the lack of use or improvement of the entire width or length of the roadway does not limit the right of the public to the improvement or use of the portion actually traveled. Conversely, defendant urges that acceptance of a common-law offer of dedication must be complete in its scope and evidenced by some overt, unequivocal act, and may not be based upon mere partial use. Acceptance of any unused portion of dedicated property, it is claimed, must accordingly, be designated by stakes, monuments or other affirmative means and that, prior to such acts evidencing acceptance, an offer may be revoked. In *Geitl* v. *Smith,* 320 Ill. 467, relied upon by defendant, the evidence affirmatively disclosed that in paving a street abutting the alley in controversy, the curb was built straight along in front of the alley with no provision made to permit access to or egress from the alleged alley. This act, it was held, indicated that

the municipal authorities had no intention of assuming control of the strip and their belief that it was not an alley. In *Moore* v. *City of Chicago,* 261 Ill. 56, it was admitted that the only street accepted by the city was One Hundred Sixth street. From the evidence it appeared that all remaining streets were left wholly unimproved, submerged in water, overgrown with weeds, and with no stakes or other monuments to indicate their location. Under these circumstances, it was held that the acceptance of One Hundred Sixth street did not indicate an intention to accept all the streets in the subdivision.

The rule deducible from the authorities cited is that each case is dependent upon its own facts, the determining factor being the intention on the part of a municipality, either to accept in full or to abandon some portion or all of the project. In *Trustees of Schools* v. *Dassow,* 321 Ill. 346, the argument was advanced that because no ordinance was passed by the village of Chatsworth accepting a plat, no acceptance was shown. This court held, however, that acceptance was demonstrated by user, and that "it is not required, in order to indicate an acceptance of a plat, that a city or village shall make immediate use of all of the streets shown thereon. Streets in an addition may be opened up and developed as the growth of the city or village in that locality requires. * * * Acceptance of streets by a city or village may be shown by the affirmative act of taking possession thereof for purposes of placing water mains or sewers therein or by the general user by the public for a considerable period of time." Again, in the absence of a contrary intention, acceptance by a municipality of the principal portion or nearly all of the streets of a subdivision raises a presumption of acceptance by it of all the streets in the subdivision. (*Kennedy* v. *Town of Normal,* 359 Ill. 306; *Consumers Co.* v. *City of Chicago,* 268 Ill. 113; *Village of Lee v. Harris,* 206 Ill. 428.) Moreover, the acceptance cannot be confined to the par-

ticular portions where work is done, in the absence of circumstances from which it can be inferred there was an abandonment by the public. (*Fairbury Union Agricultural Board* v. *Holly*, 169 Ill. 9; *Waugh* v. *Leech*, 28 Ill. 488.) In the *Fairbury case*, the court stated: "The road was a single, direct strip, and the public could not be required to make repairs where not needed, for the purpose of accepting the whole. The acceptance cannot be confined to the particular spots where the work was done, and the public be deprived of the remainder." It is evident that the same strict requirement of acceptance and use is not necessary in the case of a public easement as is required where the easement is of a private nature. Although admittedly the main traveled track did not occupy the entire forty feet, the evidence fails to disclose any act of abandonment of any portion. Indeed, in addition to continued public use of part of the strip, the evidence supports the claim of plaintiff that, as occasion required, use extended beyond the improved or traveled portion. Grass and weeds were mowed and cut by the commissioner of highways. The roadway being located outside a municipality, and in the absence of acts indicating an intention of abandonment, the acts described are sufficient to manifest an acceptance by the public of the entire forty-foot strip. Incidentally involved is the consideration that, since the inception of this roadway, several subdivisions have been organized north of and beyond Lincoln highway, a through thoroughfare to which this road constitutes the only means of access. At the time of the purchase of lots in these subdivisions the deeds were of record showing a forty-foot strip intended to be used as a highway. These purchasers also have an interest, inasmuch as it might well be argued that their lots were purchased with a view to the use of this roadway and its probable ultimate extension to its full width of forty feet.

As additional ground for reversing the decree, it is convincingly urged by plaintiff that defendant had no title upon which to base revocation of the Stanley offer of the strip in controversy for road purposes. There is merit to this contention. By merely reserving a twenty-foot strip for a public street, the deed of 1908 from the Martins to Stanley had the effect of conveying the underlying title to the grantee subject to the easement so dedicated. (*Gould* v. *Howe,* 131 Ill. 490.) .In his deed of 1910 to Margaret C. Hoover, Stanley, however, excepted from the conveyance of lot 1 a forty-foot strip north from the south line 5.97 chains. By so excepting, and not merely reserving, title to the excluded strip remained in Stanley and could not have been conveyed to defendant by the Martins' estates in 1936 for the adequate reason that the Martins' estates did not then possess the title to convey. In *Dickman* v. *Madison County Light and Power Co.* 304 Ill. 470, the court pertinently observed: "An exception in a deed withholds from its operation some part or parcel of the thing which but for the exception would pass by the general description to the grantee. A reservation is the creation of some new right issuing out of the thing granted, and which did not exist before as an independent right, in behalf of the grantor and not of a stranger." The failure of the deed from the Martins' estates to mention any reservation for road purposes and of the plats in evidence to contain any reference to this roadway, is relied upon by the defendant to constitute color of title to the strip in controversy. This claim is rendered vulnerable by her stipulations to the effect that the abstract of title furnished at the time of purchase contained apt references to the deeds and to the specific reservations in them pertaining to the establishment of the roadway. The absence of a title to the forty-foot strip in the Martins' estates, which they could have conveyed by their 1936 deed, places defendant in

the position of having performed acts of encroachment in an attempt to narrow the width of a road, admittedly offered for public use in 1910, at a time when she did not have even a semblance of title to the space within the prescribed limits of the strip. The obstruction on her part amounted to trespass and is unwarranted in the law. Nor does the conveyance by Stanley, in 1942, to defendant of all his interest in the strip aid her. By this quitclaim deed, Stanley conveyed only such interest in the strip as he then owned. Having excluded it from his deed in 1910 to Margaret C. Hoover, title to the strip, subject to an easement in the public for street purposes, remained in him until conveyed to defendant in 1942. In the interim, Stanley, not having by any act or manifestation revoked his previous dedication, the easement was still in effect at the time he conveyed to defendant. His quitclaim deed to her did not have the retroactive effect of validating her previously unwarranted acts of trespass.

The decree of the circuit court is reversed and the cause is remanded, with directions to enter a decree in favor of plaintiff and against defendant in accordance with the views expressed in this opinion.

*Reversed and remanded, with directions.*