PAMELA WARZYNSKI, Plaintiff-Appellee, *v.* THE VILLAGE OF DOLTON, Defendant-Appellant—(THE VILLAGE OF DOLTON, Third-Party Plaintiff-Appellee, *v.* MARTIN NOVAK, Third-Party Defendant-Appellant.)

(No. 58930;

First District (5th Division)—July 12, 1974.

*Modified upon denial of rehearing and supplemental opinion
filed September 27, 1974.*

Jacobs, Williams & Montgomery, LTD., of Chicago (Barry L. Kroll, of counsel), for third-party appellants.

Lisco and Field, of Chicago (Sidney Z. Karasik and Gary Dienstag, of counsel), for appellee.

John W. Purney, of Chicago (Neal K. Wishnick, of counsel), for appellant and third-party appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal by the Village of Dolton (Village) from a judgment entered on a verdict of $20,000 in favor of plaintiff. Martin Novak (Novak), as third-party defendant, separately appeals from an indemnity judgment in favor of the Village against him.

On its appeal, the Village contends (1) plaintiff failed to prove it accepted and owned the street on which the occurrence took place; (2) it was error to give plaintiff's instruction concerning defendant's acceptance of the street; and (3) plaintiff failed to prove that the Village was negligent.

In his separate appeal from the third-party judgment, Novak also contends plaintiff failed to establish the Village's acceptance of the street or its negligence. In addition, he asserts the Village is not entitled to indemnification from him because (a) the Village was actively negligent; and (b) there was no pre-tort relationship existing between the Village and him.

Plaintiff, a passenger in an automobile driven by Novak, was injured when the automobile came to a sudden stop on 155th Place in the Village of Dolton. The facts indicate that on March 24, 1968, Novak and plaintiff were traveling in a southerly direction on Dante Avenue, a paved street

within the corporate limits of the Village. Dante Avenue turns east into 155th Place at an L-shaped intersection. Novak turned on 155th Place, which was unpaved and gravel covered, and traveled a few feet before his automobile came to a sudden halt, causing injuries to plaintiff when her head struck the windshield.

Plaintiff thereafter filed the instant suit against both Novak and the Village, asserting in her amended complaint that the Village negligently maintained and controlled 155th Place, and was negligent in permitting a hole and water main to exist on 155th Place and, further, that Novak was negligent in the manner in which he operated his automobile. In its answer, the Village admitted it controlled and maintained a water main on 155th Place, at or near Dante Avenue, but denied the balance of plaintiff's allegations. The Village then proceeded to file a third-party complaint against Novak, seeking indemnity on an active-passive negligence theory in the event a judgment would be entered for plaintiff against it.

The following testimony was adduced at trial: Maurice Albrecht, superintendent of public works for the Village, testified under section 60 that a plat of subdivision recorded in 1958 and offered into evidence by plaintiff, indicated that 155th Place was marked "hereby dedicated" and that when the dedication was recorded, Dante Avenue was not laid out or paved; that 155th Place remained unpaved through the time of the occurrence here; that sewer and manhole covers had been on 155th Place for about 8 years, and curbs and sidewalks were on Dante Avenue, with curbs also being on 155th Place; that the curbs, sidewalks and manhole covers were installed by others under permits issued by the Village; that there were street signs on the corner of Dante Avenue and 155th Place, designating those to be the respective streets; that the signs conformed to the standards of the Village and were placed there by others under its authority; and, that the Village never put any barricades on 155th Place, because of its contention that it was private property. Albrecht also expressed his belief that when the plat of subdivision was recorded, 155th Place would ultimately become part of the Village.

Plaintiff testified that she and Novak were returning from Chicago at approximately 12 A.M. and were traveling south along Dante Avenue at 20 miles per hour. After turning on 155th Place, the car came to a sudden halt and she was propelled forward, causing her head to strike and break the windshield, cutting her face. On cross-examination, plaintiff asserted that she noticed no streetlights on 155th Place and that the street was lower in grade than Dante Avenue.

Novak's testimony was substantially similar to that of plaintiff, but he also testified that when the car came to a stop he heard "a thudding sound,

a hard, metal sound," and that when he backed out he heard "a little grinding sound around the transmission." Moreover, when he returned to the scene the following day, he saw a sewer protruding above ground level, that the soil was depressed around the sewer, and that there was broken glass within 4 feet of the sewer. He also observed that the underside crossframe of his auto had been damaged and that the transmission had moved.

During the trial, plaintiff dismissed her action against Novak and proceeded against the Village. A $20,000.00 verdict was returned in her favor, and, pursuant to the Village's instructions incorporating the theory of active-passive negligence, a similar verdict for indemnity was returned in its favor as third-party plaintiff against Novak. Both the Village and Novak have appealed the judgments against them.

OPINION

Initially, both the Village and Novak, as third-party defendant, contend that the Village had no duty to plaintiff because of her failure to establish that 155th Place was dedicated and accepted. Implicit in any common-law dedication is not only the necessity of finding the intent to dedicate, but also the acceptance by the public. (*McCue v. Berge*, 385 Ill. 292, 52 N.E.2d 789.) In this regard, we note that the question of the Village's acceptance was submitted to the jury and, based upon the facts elicited at trial, the jury found the dedication of 155th Place had been accepted. We are now being asked to review the decision on this factual question and, in support of their contention, the Village and Novak assert that there was never any intention evidenced by the Village to accept 155th Place, and that it was its policy not to accept a street unless or until it conformed to standards established by it for approval. 155th Place had not met those requirements, and they argue that in the absence of any formal acceptance, there was no liability for an accident occurring on a street not owned by the Village.

■■ We cannot subscribe to this argument. The requisites of a common-law dedication are (1) an intent on the part of the owner to donate the land to public use; (2) acceptance by the public; and (3) clear, satisfactory and unequivocal proof of those facts. (*City of Greenville v. File*, 130 Ill.App.2d 878, 265 N.E.2d 518.) There was not nor is there now any question raised as to the efficacy of the offer to dedicate by the subdividers of the property. Thus, the issue to be resolved is whether or not there are sufficient facts to indicate an implied acceptance by defendant. A litany of factors have been used to establish a municipality's implied acceptance of an offered parcel of land. For our purposes, however, we will only discuss those which we deem sufficient to raise a factual question of whether an acceptance could be implied.

■■ Illinois cases have repeatedly held that acceptance of an offer of dedication could be implied from the fact that the municipality had constructed or authorized the construction of sewers, water pipes or the like on the subject parcel. (*Consumers Co. v. City of Chicago*, 268 Ill. 113, 108 N.E. 1017; *Trustees of Schools v. Dassow*, 321 Ill. 346, 151 N.E. 896; 52 A.L.R.2d 263, 271.) As stated in *McCue v. Berge*, 385 Ill. 292, 301, 52 N.E.2d 789:

> "Acceptance of streets by a city or village may be shown by the affirmative act of taking possession thereof for purposes of placing water mains or sewers therein or by the general user by the public for a considerable period of time."

In the instant case, there is uncontradicted testimony that the Village maintained a water main on 155th Place to serve the residents of the Village.

■■ In addition, an acceptance of a dedication may be implied from use by the public for the purpose for which the dedication was made. (*Kemper v. Campbell*, 27 Ill.2d 376, 189 N.E.2d 282.) Here, a resident of the Village testified that not only did he drive on 155th Place, but that he saw other automobiles use the street for a period of years prior to the occurrence. Moreover, street signs, conforming to the standards of the Village, clearly designated 155th Place as a street and could be construed as an invitation to the public to use it.

■■ It is our opinion that cumulatively there was sufficient evidence presented so that a question of fact was raised as to whether there was an implied acceptance of the offer to dedicate (*Campion v. City of Decatur*, 151 Ill.App. 161) and, from our review of the record, we believe the jury's finding on this issue is supported by the record.

■■ The Village and Novak further assert that plaintiff failed to prove her case in that there was insufficient evidence presented to establish the negligence of the Village and, in any event, they argue that the condition of the road was not a proximate cause of the injury. Since we have heretofore determined that the jury's finding of the acceptance by the Village of 155th Place was supported by the evidence, it follows that it had a duty to maintain that street in a reasonably safe condition. (Ill. Rev. Stat. 1971, ch. 85, par. 3—102; *Cunis v. Brennan*, 7 Ill.App.3d 204, 287 N.E.2d 207.) Moreover, the facts indicate that it had or should have had sufficient notice of the existing conditions on 155th Place. Constructive notice is present where a defective condition exists for such a length of time that public authorities, by the existence of reasonable care and diligence, might have known of the condition. (*Palermo v. City of Chicago Heights*, 2 Ill.App.3d 1004, 276 N.E.2d 470.) Here, testimony indicated that sewer covers and manhole covers were placed on 155th Place some 8 years

before the occurrence, and that the street was in substantially the same condition for some years prior to the occurrence.

■■ Based upon the findings of the acceptance by the Village and its resulting duty to maintain 155th Place in a reasonably safe condition, we believe there was sufficient evidence presented to create the following factual questions: (1) whether the Village breached its duty to maintain the site; and (2) whether this breach of duty was a proximate cause of plaintiff's injuries. (*Stauf v. City of Rockford*, 2 Ill.App.3d 489, 275 N.E.2d 459.) Testimony concerning the occurrence could reasonably lead to the belief that the accident occurred as the result of Novak's car contacting the protruding sewer cover on 155th Place and, without the benefit of any alternative theories offered by the Village as to the cause of the occurrence, it was reasonable for the jury to adopt plaintiff's theory for the occurrence. As we stated in *Lindroth v. Walgreen Co.*, 407 Ill. 121, 134, 94 N.E.2d 847:

"[R]easonable inferences may be drawn from established facts and all that can be reasonably required to establish controverted facts, whether the evidence be direct or circumstantial, is that the evidence creates a greater or less probability leading, on the whole, to a satisfactory conclusion.

We do not believe the jury's finding of a breach of duty which proximately caused plaintiff's injuries was against the manifest weight of the evidence nor incorrect as a matter of law.

■■ The Village also separately contends that the court erred in tendering plaintiff's instruction number 24 regarding the presumption of acceptance by a municipality where the principal streets in a subdivision have been accepted. (*Kennedy v. Town of Normal*, 359 Ill. 306, 194 N.E. 576.) We cannot find in our review of the record whether the complained of instruction was objected to at the conference on instructions, since the conference was neither included in the report of proceedings nor abstracted. Thus, in the absence of any basis substantiating the defendant's claim of objection, we cannot consider the issue here. As stated in *Caughron v. Welnicki*, 95 Ill.App.2d 118, 120, 237 N.E.2d 829:

"We have no way of knowing whether any specific objection was made to the instruction now complained of, or if made, the ruling of the court thereon. Nor do we have the benefit of reviewing the other instructions given to the jury. Plaintiffs have failed to abstract the conference on instructions. The alleged objection to the particular instruction in question and the claimed error of the trial court in giving the instruction is not presented to us for review."

■■ Novak maintains that because the jury rendered a verdict against

him, it necessarily found him to be actively negligent. He argues that such active negligence was an intervening cause of the occurrence, which broke the causal connection between the condition created by the Village and the plaintiff's injuries and thus relieved the Village from any liability to plaintiff. In this event, he points out the Village would have no action against him. We believe that in this instance, the argument has no merit. As stated in *Green v. Welts*, 130 Ill.App.2d 600, 604, 265 N.E.2d 188:

> "Not every intervening act sufficiently insulates the initial wrong-doer from liability. If a resulting injury is a natural and probable result of the original negligent act or omission, and is of such a character that an ordinarily prudent person ought to have foreseen as likely to occur as a result of the original negligent act, even though the precise or exact result need not have been foreseen, then the original negligent act is a proximate cause of the resulting injury."

Once again, the factual question of whether Novak's conduct was of the type that the Village should have reasonably foreseen was, in our opinion, properly submitted and resolved by the jury.

The appeal of third-party defendant Novak from the verdict and judgment against him for indemnity involves a consideration of the doctrine of active-passive negligence. Novak contends, notwithstanding the jury's verdict to the contrary in the third-party action, that the conduct of the Village in negligently maintaining 155th Place was active negligence and should have precluded any right it might have had against him for indemnity. It is our opinion that the Village did not establish the measurable difference in the degree of fault necessary before indemnification will be permitted.

■■■ The basis for the allowance of indemnity is predicated upon a finding of a higher degree of culpability by one tort-feasor, so that placing the entire burden on him would be warranted. (*Reynolds v. Illinois Bell Telephone Co.*, 51 Ill.App.2d 334, 201 N.E.2d 322.) Here, the verdict of the jury in favor of plaintiff against the Village necessarily found the condition of 155th Place to be a proximate cause of her injuries and that it reasonably should have foreseen that a motor vehicle might drive over the raised sewer cover on 155th Place, as Novak's car apparently did here. With this in mind, we cannot justify the imposition of total liability on Novak on the basis of his conduct being the primary cause of the injury. We believe that the actions of the Village in proximately causing the injury to plaintiff were of such a nature that its conduct should be deemed active negligence. This would militate against any action for indemnity against Novak, regardless of whether his conduct might also be considered active negligence.

■■ Most recently, our supreme court, in *Carver v. Grossman*, 55 Ill.2d 507, 511-12, 305 N.E.2d 161, has noted:

"Consideration must also be given to section 25(2) of the Civil Practice Act concerning third-party proceedings which states: 'Nothing herein * * * creates any substantive right to contribution among tortfeasors * * * which has not heretofore existed.' (Ill. Rev. Stat. 1969, ch. 110, par. 25(2).) In light of this statutory language and the general rule against contribution the facts of the case must clearly justify indemnification. If they do not, the net effect of the application of the implied indemnity theory will be not only to allow contribution but to permit the total shifting of responsibility to one negligent party while permitting the other to totally escape the responsibility for his negligent conduct."

We cannot find the "clear justification" required by *Carver* in the facts of the instant case.

■■ The Village also asserts "[C]ertainly the Village of Dolton can be considered nothing but passive in that they did nothing to join in the act of Martin Novak * * *." Passive negligence, however, in this context is not synonymous with inaction. In passing on that very point, this court, in *Moody v. Chicago Transit Authority*, 17 Ill.App.3d 113, 117, 307 N.E.2d 789, stated:

"Determination of this question is not a matter of proceeding according to the usual dictionary definitions of the words 'active' and 'passive'. These words are terms of art and they must be applied in accordance with concepts worked out by courts of review upon a case by case basis. Under appropriate circumstances, inaction or passivity in the ordinary sense may well constitute the primary cause of a mishap or active negligence [citation]. It has been appropriately stated that 'mere motion does not define the distinction between active and passive negligence.'"

Furthermore, we note Novak's contention that there was lacking between the Village and him a pre-tort relationship as required by *Muhlbauer v. Kruzel*, 39 Ill.2d 226, 234 N.E.2d 790. There, after reviewing the line of cases which have established the theory that one passively negligent was entitled to indemnification from one actively negligent, our supreme court affirmed a trial court dismissal of a third-party complaint for indemnification because the complaint did not "disclose some relationship upon which a duty to indemnify may be predicated." Here, there is lacking any pre-tort relationship between Novak and the Village and, under the authority of *Muhlbauer*, the verdict against Novak cannot stand.

For the foregoing reasons, we are of the opinion that defendant is

precluded from indemnity against Novak (*Carver v. Grossman, supra*), and the judgment on the third-party action is reversed.

Judgment for plaintiff against the Village of Dolton is affirmed.

Judgment for the third-party plaintiff Village of Dolton against Martin Novak is reversed.

DRUCKER and LORENZ, JJ., concur.

### SUPPLEMENTAL OPINION

Mr. PRESIDING JUSTICE SULLIVAN delivered the supplemental opinion of the court upon denial of the petition for rehearing:

In its petition for rehearing, the Village asks that we reconsider our opinion and reinstate its judgment against Novak. It contends that the questions concerning active-passive misconduct are matters of fact to be resolved by the jury. It argues that the facts here justify the jury's finding that Novak was actively negligent and that its conduct was merely passive.

While it is generally true that questions of fact are to be resolved by the jury, we perceive a particular problem in the genre of cases involving the application of the active-passive theory of implied indemnity because the Illinois Pattern Jury Instructions do not include definitions of the words "active" or "passive." Furthermore, case law has given the words no definitive meaning and, as a consequence, there has been no agreement between the trial attorneys and the courts as to acceptable instructions. The result has been that juries are seldom informed as to the meaning of these words.

It may readily be seen that if the bench and bar are unable to agree upon their definitions, it would be unreasonable to expect jurors to do so in the absence of instructions. In this regard, it is generally believed that jurors relate "active" to some form of action or exertion, and "passive" to inaction or inoperation.

■■■ The case law, however, does not support such conclusions. In *Moody v. Chicago Transit Authority*, 17 Ill.App.3d 113, 307 N.E.2d 789, referred to in the original opinion, this court said the words are terms of art, to be applied in accordance with concepts worked out by courts of review and not necessarily according to the usual dictionary definitions. In *Moody*, it was held that inaction under appropriate circumstances could constitute active negligence. So, too, in *Trzos v. Berman Leasing Company*, 86 Ill.App.2d 176, 183, 229 N.E.2d 787, it was stated that "mere motion does not define the distinction between active and passive negligence." In *Topel v. Porter*, 95 Ill.App.2d 315, 330, 237 N.E.2d 711, the court said:

"The distinction between active and passive negligence is a court made one and there is no single comprehensive definition thereof. To date the cases have been decided on the facts of each case."

The *Topel* court also stated, " "* * * *  either a fault of omission or one of commission may constitute active negligence * * *.' "

It may be seen that the problem is one inherent in the term "active." *Trzos* tells us that motion does not distinguish it from "passive," and we see that in *Topel* and *Moody*, inaction was held to be "active," while in *Pennsylvania Co. v. Roberts & Schaefer Co.*, 250 Ill.App. 330, and *United States v. Chicago, Rock Island & Pacific Ry. Co.* (10th Cir. 1948), 171 F.2d 377, action was held to be "passive."

■■ From our examination of the cases in Illinois and other jurisdictions, we are of the opinion that there are two critical prerequisites for the invocation of non-contractual implied indemnity; first, the damages which the third-party plaintiff seeks to shift are imposed upon him as a result of some legal obligation to the plaintiff in the principal action; and second, it must appear that the third-party plaintiff did not actively or affirmatively participate in the wrong.

As to the first of these prerequisites, we believe it must appear that the third-party plaintiff had an obligation to pay; *i.e.*, where a judgment has been entered or in a situation where a settlement was made, that it was justified on some legal basis. (See *Sleck v. Butler Bros.*, 53 Ill. App.2d 7, 202 N.E.2d 64.) As to the second prerequisite, it should be noted that although the term "actively" is commonly used in implied indemnity situations, we have added the word "affirmatively," because it appears to us that the trend in the Illinois cases and in other jurisdictions now requires a showing that a third-party plaintiff did not breach an affirmative duty owed to the plaintiff in the principal case. Thus, in *Carver v. Grossman*, 55 Ill.2d 507, 305 N.E.2d 161, defendant turned the keys in the ignition of the car, and it lurched forward striking the plaintiff. Defendant filed a third-party complaint against plaintiff's employer, who had left the car with the keys in the ignition and the transmission in gear. The court stated that although the condition was created by the employer, the situation required the active violation by defendant of the duty of reasonable care that he owed plaintiff in order to cause the injury. The *Carver* court reasoned that both the employer and the defendant were under the same duty to exercise care for the plaintiff and that both were actively negligent. See also *Moody v. Chicago Transit Authority, supra.*

By way of reference, courts in other jurisdictions having similar third-party remedies have found that a failure to discover an open and ob-

vious condition, if there was a duty to inspect, was held to be active negligence (see *Alabama Great Southern R.R. Co. v. Chicago & Northwestern Ry. Co.* (8th Cir. 1974), 493 F.2d 979); and that an improper inspection which failed to discover an obviously dangerous condition was considered to be active negligence (*Chicago, Rock Island & Pacific R.R. Co. v. Chicago & Northwestern Ry. Co.* (8th Cir. 1960), 280 F.2d 110, *cert. denied*, 364 U.S. 931). There, it was held that a failure to properly inspect after a railroad car had come into the control of one railroad was negligence of a degree at least equal to another railroad's negligence in breaching its duty to deliver its cars in a reasonably safe condition.

Furthermore, in those situations where the third-party plaintiff was under an affirmative duty as an original defendant to take some action regarding a peril known to him, or which in the exercise of due care should have been known to him, failure to so act may constitute an active or affirmative participation in the specific wrong. Thus, in *Home Insurance Co. v. Atlas Tank Manufacturing Co.* (Miss. 1970), 230 So.2d 549, a ravine was filled in, causing a 13,000-volt power line to be in a dangerously low position, a fact known to the utility. It was held that an affirmative duty devolved upon the utility to remedy the condition and the failure to perform that duty constituted an active or affirmative participation in the tortious activity.

■■ In the instant case, although as we have stated above inaction may under certain circumstances be considered active negligence, the jury was not so instructed. In such situations, we believe this court is required to review the record to determine whether, under existing law, the evidence is sufficient to support the determination that the Village was only passively negligent.

In this regard, we note that in its third-party complaint, the Village alleges that Novak was actively negligent and that if it violated any duty, it was merely passive misconduct. In the issues instruction tendered by the Village on its third-party complaint, the jury was informed that the Village claimed Novak was actively negligent because he made a left turn onto an unpaved road at an excessive speed. However, the only testimony as to how the accident occurred was that Novak was traveling about 20 m.p.h. on a paved road at about 12 A.M. and slowed to 10-15 m.p.h. as he left-turned into the unpaved road, 155th Place, a gravel road identified as a street by a standard village sign. His car was brought to an abrupt stop by the raised sewer. This sewer had apparently been in substantially the same condition for the past 8 years. Given this factual picture, with no instruction as to the meaning of "active" or "passive," we believe the jury had little alternative other than to con-

sider that Novak was actively negligent because he was moving, and that the conduct of the Village was "passive" because the sewer cover was stationary. It is clear that the jury, by its verdict in favor of plaintiff, found the Village to have violated a duty to maintain 155th Place in a reasonably safe condition. We believe that the negligence of the Village in allowing the sewer on an unlighted street to be raised above the street level was at least equal to the negligence of Novak as he drove in darkness over the said sewer, and can only be viewed as an active or affirmative participation in the wrong.

■■ In view of the foregoing, we reject the contention of the Village on rehearing that the jury verdict on the third-party complaint should be allowed to stand, and we retain our belief that there is no clear justification to permit the total shifting of responsibility from the Village to Novak. See *Carver v. Grossman, supra.*

■■ Defendant also contends for the first time in its petition for rehearing that the pre-tort relationship required by *Muhlbauer v. Kruzel*, 39 Ill.2d 226, 234 N.E.2d 790, exists here because:

> "Novak had a license (not a right) to operate a motor vehicle on the streets of the Village. That license carried with it, obligation. The driver is tested in knowledge of safe driving practices and an ability to exercise ordinary and reasonable control in the operation of a motor vehicle (Chapter 95½, Section 6—019(b) Ill. Rev. Stat.) Every driver must comply with rules relating to the operation of vehicles upon highways. The drivers of vehicles involved in accidents have a duty to render aid, give information to the Village and a duty to report accidents to local police department. (Chapter 95½, Section 11—407(b), Ill. Rev. Statutes) These are all duties that were on Novak when using the Village's streets. This was a pre-tort relationship. Novak had a duty not to drive recklessly (Chapter 95½ Section 11—503). This was a pre-tort duty."

We disagree, noting first that a license from the State of Illinois does not support a duty on the part of Novak to indemnify the Village. In *Muhlbauer*, the supreme court (referring to the appellate court opinion in *Muhlbauer v. Kruzel*, 78 Ill.App.2d 343, 348, 223 N.E.2d 227) stated:

> "The appellate court affirmed, holding that 'the acts of another do not impose liability on one unless some relationship between the parties or some circumstance imposes a nondelegable duty upon the passive party,' and that 'the amended third-party complaint demonstrates no relationship or circumstance which creates a nondelegable duty on Kruzel.'" 39 Ill.2d at 229.

It also appears that in *Muhlbauer* a statement of facts was made for

the first time in the supreme court which indicated that the necessary pre-tort relationship existed. Concerning this statement, the court said:

"If those facts had been alleged by Kruzel it would be possible to discern potential relationships that would support a duty on the part of Wilson to indemnify Kruzel.

But no such facts were alleged, and, as the appellate court pointed out, the 'amended third party complaint demonstrates no relationship or circumstance' that would give rise to a duty to indemnify. (78 Ill.App.2d at 348.)" 39 Ill.2d at 232.

In the instant case, as we have heretofore stated, in its third party complaint the Village stated no facts suggesting this relationship, alleging only that Novak was actively negligent and its conduct was merely passive. Neither were any facts set forth in the issues instructions tendered by it which in any way indicated that a pre-tort relationship existed. Moreover, it is our belief that the record discloses no evidence of any such interrelationship.

■■■ In view thereof, we adhere to our original position that the pre-tort relationship required by *Muhlbauer* is not present here and that the judgment of indemnity in favor of the Village against Novak cannot stand. Accordingly, we deny the petition for rehearing.

The original opinion has been modified somewhat, without change in its effect.

Opinion modified.

Petition for rehearing denied.

DRUCKER and LORENZ, JJ., concur.