Valentino **ENRIQUEZ**, Michael Johnson, Charles Fields, Samuel Dewberry and Harry Sharp, Plaintiffs,

v.

**HONEYWELL INC. and Magnetic Peripherals, Inc., Defendants.**

**No. CIV–76–0432–E.**

United States District Court, W. D. Oklahoma.

May 23, 1977.

---

902

D. Hayes Foster and A. Visanio Johnson, Oklahoma City, Okl., for plaintiffs.

Edward E. Soule and James C. Chandler of Lytle, Soule & Emery, Oklahoma City, Okl., for defendants.

Stephen S. Lewenberg, Waltham, Mass., and David A. Grabham, Minneapolis, Minn., of counsel, for Honeywell Inc.

Keith E. Goodwin of Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Minn., of counsel, for Magnetic Peripherals, Inc.

1. Plaintiffs have withdrawn the request for certification of a class.

MEMORANDUM OPINION AND ORDER

EUBANKS, District Judge.

Plaintiffs assert claims arising out of alleged violations of 42 U.S.C. § 1981 (the Civil Rights Act of 1870) and 42 U.S.C. § 2000e et seq. (Title VII).

Now before the court for disposition is defendants' motion for partial summary judgment. Defendants seek an order:

1) dismissing the Title VII claims of plaintiffs Johnson, Fields, Dewberry and Sharp; and,

2) dismissing the § 1981 claim of plaintiff Enriquez.

*Introduction*

The allegations of the complaint are nonspecific, all plaintiffs joining in an assertion of discriminatory treatment by defendants of blacks and Spanish-surnamed Americans[1] in violation of rights secured to them by the aforementioned statutes. While no single plaintiff has alleged facts establishing that he personally was a victim of any discriminatory act by defendants, it is deemed to have been conceded that each plaintiff has stated a claim cognizable in this court. Accordingly, defendants' motion is not in reality one to dismiss claims, but rather is purposed to identify the jurisdictional predicate upon which each plaintiff's claim rests.

*The Title VII claims*

It is undisputed that only plaintiff Enriquez has received the EEOC notice of right to sue which provides the requisite basis for invocation of federal court jurisdiction over a Title VII claim.

His charge complained of retaliation, Enriquez protesting that although he had voluntarily withdrawn a prior complaint lodged with the Oklahoma Human Rights Commission, Honeywell[2] had nonetheless retaliated against him for filing in the first instance.

2. It is alleged in the complaint, and denied in the answer, that the defendant Magnetic Pe-

It is clear from the EEOC's Determination that the agency's investigation was confined within the parameters of that charge.[3]

█ The question here raised is whether plaintiffs Johnson, Fields, Dewberry and Sharp may bring their claims of discrimination against blacks with respect to hiring, job assignments and promotions under the umbrella of that charge. The answer is that they cannot.

Both plaintiffs and defendants rely upon the (unpublished) Opinion and Order of this court in *Sanders v. Safeway Stores, Inc.,* (No. CIV-73-695-E, Order of September 15, 1975). The issue therein examined was whether a number of persons who had not pursued their administrative remedies could join in Sanders' Title VII non-class action against Safeway. In that Order the court noted that Title VII, in providing for administrative processing of charges, is designed to permit agency investigation of the adequacy of a charge, and (if the charge be found adequate) to allow for voluntary compliance and conciliation, and (should conciliation fail) to narrow the issues for prompt adjudication. Thus, it was said:

"' . . . [N]o procedural purpose could be served by requiring scores of substantially identical grievances to be processed through EEOC when a single charge would be sufficient to effectuate both the letter and spirit of Title VII.'" [Quoting *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711, 720 (7th Cir. 1969)].

The court opined that such reasoning could justify the joinder of persons who have not pursued their administrative remedies, with the caveat:

"It is clear that in order to maintain the integrity of the administrative procedure mandated by Congress, and to safeguard the rights of defendants who are without notice of the exact charge(s), those joined must be limited to raising issues asserted by the filing plaintiff in his or her charge before the EEOC." (Footnotes omitted.)

Plaintiff Joetta Sanders had lodged a charge of (and in her complaint alleged) sex discrimination; those seeking to join were females complaining of sex discrimination. "Relation back" of such claims to an identical individual EEOC charge does not undermine the congressional prescription of administrative processing.

Such is not the case here.

It bears reiterating that the court reaches only the question of the scope of the agency-processed charge. Accordingly, there is no need to deal at length with defendants' argument that even had the charge investigated been one of discrimination on account of national origin, claims of racial discrimination could not reasonably be deemed to have been encompassed therein. Defendants rely upon the thoughtful opinion of Judge Fogel in *Jones v. United Gas Improvement Corp.,* 68 F.R.D. 1, at 7–10 (E.D. Pa.1975). Without agreeing or disagreeing with the particular resolution therein, this court finds applicable here only the general principle that a claim under Title VII is proper if it grew or could reasonably have been expected to grow out of the charge investigated.

Claims of discrimination against blacks in hiring, job assignments and promotions were not within the reasonably probable scope of the EEOC's investigation of Valentino Enriquez' charge of retaliation.[4]

ripherals, Inc. is successor in interest with continuity of management to defendant Honeywell Inc.

**3.** The charge is described in the Determination as follows: "Charging Party alleges that Respondent violated Title VII by singling him out for unfair treatment, by downgrading his position, and by harassing him in retaliation for a previously filed charge." The court has not been enlightened as to the precise nature of the first charge. It is presumed from reasonable inferences drawn from pleadings of record to have been a charge of discrimination because of national origin.

**4.** Indeed, even the adequacy of a complainant's own initial charge is independent of consideration of a charge of retaliation. *EEOC v. Kallir, Philips, Ross, Inc.,* 401 F.Supp. 66 (S.D.N.Y. 1975).

The sole proper legal foundation upon which the claims of plaintiffs Johnson, Fields, Dewberry and Sharp rest is 42 U.S.C. § 1981.

### The § 1981 claim

Defendants argue that discrimination on the basis of national origin is not within the purview of the statute's extension to all persons within the jurisdiction of the United States such equal benefit of law "as is enjoyed by white citizens."

While the response is not clear, it is apparent that the court is urged to find Enriquez a "non-caucasian" because he is of Spanish descent, under the authority of *Guerra v. Manchester Terminal Corp.*, 498 F.2d 641 (5th Cir. 1974).

■ It is difficult to comprehend how *Guerra* is of aid here. The issue before that court was the proper interpretation of the phrase "all persons."[5] The question before this court is whether there is to be discerned in the phrase "white citizens" a restriction of the statute's protection to those who have been victims of racial discrimination.

The court answers in the affirmative. See *National Ass'n of Government Emp. v. Rumsfeld*, 413 F.Supp. 1224, 1228 (D.C. 1976); *Gradillas v. Hughes Aircraft Co.*, 407 F.Supp. 865 (Ariz.1975). See thorough consideration given the issue by Judge Fogel in *Jones, supra* at 10–15, concluding:

"[T]he provisions of 42 U.S.C. § 1981 are limited in their application to discrimination, the effect of which is to deny to any person within the jurisdiction of the United States any of the rights enumerated in that section, to the extent that such rights are enjoyed by white citizens of this nation. Discrimination on other grounds, such as religion, sex, or national origin, to which white citizens may be subject, as well as white non-citizens, non-white citizens, or non-white non-citizens, is not proscribed by the statute."

■ That answer disposes of the arguments made, but not of the full issue as the court views it. The fact is the line between discrimination on account of race and discrimination on account of national origin may be so thin as to be indiscernible; indeed, to state the matter more succinctly, there may in some instances be overlap.

Three recent United States District Court opinions are noteworthy in this regard. Because they are well-reasoned analyses of the issue, they are quoted at length below.

In *Cubas v. Rapid Am. Corp., Inc.*, 420 F.Supp. 663 (E.D.Pa.1976), Judge Newcomer states:

"The right to equal treatment which is guaranteed by [42 U.S.C. § 1981] protects against discrimination based on race, or on alienage. [Citing *Jones, supra.*] National origin discrimination is actionable only to the extent that it is motivated by or indistinguishable from racial discrimination. Plaintiff Rose Mary Cubas describes herself as a naturalized citizen of the United States, who is Cuban born. Plaintiff contends that Cuban Americans may be considered a non-white racial group within the meaning of § 1981. Hispanic Americans claiming that they have been discriminated against in violation of § 1981 are entitled to introduce evidence to prove that the alleged discrimination was racial in character. *Maldonado v. Broadcast Plaza, Inc.*, 10 FEP Cases 839 (D.Conn.1974); *Miranda v. Clothing Workers, Local 208*, 10 FEP Cases 557 (D.N.J.1974). We cannot find, as a matter of law, that the alleged discrimination against the plaintiff as a Cu-

---

**5.** The court interpreted those words to refer to non-citizens as well as citizens. The key to the distinction between that case and this is found at 655, n. 36:

"Given a union composed predominantly of Mexican-Americans and Mexican Nationals intending to become United States citizens, we recognize the unlikelihood that Guerra's transfer resulted from his national origin, particularly since his place was taken by a Mexican-American. As to appellants' suggestion, Brief at 9, that Guerra lost his job to a man with more seniority, the stipulated facts in this case are that Guerra was transferred because he is a Mexican citizen whose family resides in Mexico."

ban American did not contain elements of racial discrimination.[2]" At 665–666.

[Inasmuch as note 2 is pertinent, it is set forth here in part.]

"We are not aware of an authoritative and judicially manageable method for distinguishing between national origin discrimination and racial discrimination when both may be present at the same time. On the one hand, courts might attempt on a case by case basis to separate out the elements of racial and national origin discrimination. Another approach would be to consider sociological and historical evidence relevant to the experience of a particular national origin group in the community in which discrimination is alleged, together with anthropological evidence about the racial characteristics of the national origin group, and determine whether it should be rebuttably presumed that discrimination against that group is infected with racial discrimination." At 666.

Judge Frey, in *Gomez v. Pima County,* 426 F.Supp. 816 (Ariz.1976), concludes:

"[I]t is hard to contend that the Circuit Court will hold that the plaintiffs must be strictly non-caucasian in order to contend that they are not given the same employment opportunities as 'white citizens.'[1]" At 819.

In that footnote cases which have held, or arguably impliedly held, that Spanish-surnamed Americans can sue under § 1981 are cited and the note then concludes:

"Many cases hold that Section 1981 does not reach discrimination based on national origin, sex, or any grounds other than race, but they do not involve Mexican-Americans or Puerto Ricans, and *they do not involve any allegation that the discrimination was based on race.*" [Emphasis supplied by this court.]

Finally, the court quotes the interesting discussion[6] by Judge Teitel-baum in *Budinsky v. Corning Glass Works,* 425 F.Supp. 786 (W.D.Pa.1977):

"Plaintiff does not really dispute the proposition that both the language and history of § 1981 reflect an exclusive concern with racial equality, or that the courts have consistently rejected efforts to expand the scope of the statute to cover allegations of other, nonracially-based forms of discrimination. [Citations omitted.]

"Rather, plaintiff proffers, inter alia, a rather sophisticated argument based essentially upon a coupling of those few cases which have cautiously extended the reach of § 1981 with a not uninformative sociological examination of the dubious utility of our tradition definitions of 'race.' Thus, plaintiff submits, § 1981 should not stand alone among the postwar Civil Rights Acts as frozen by a wording and legislative history written before the great influx of white European immigrants to this country, but should be expanded to protect all groups of potential discriminatees who are identifiable as a 'race' or 'nationality,' or by 'national origin.'

\* \* \* \* \* \*

"The terms 'race' and 'racial discrimination' may be of such doubtful sociological validity as to be scientifically meaningless, but these terms nonetheless are subject to a commonly-accepted, albeit sometimes vague, understanding. Those courts which have extended the coverage of § 1981 have done so on a realistic basis, within the framework of this common meaning and understanding. On this admittedly unscientific basis, whites are plainly a 'race' susceptible to 'racial discrimination;' Hispanic persons and Indians, like blacks, have been traditional victims of group discrimination, and, however inaccurately or stupidly, are frequently and even commonly subject to a 'racial' identification as 'non-whites.' There is accordingly both a practical need and a logical reason to extend § 1981's

6. It could be said Judge Teitelbaum's remarks are dicta, inasmuch as Budinsky is a Slav, but the court's analysis places the entire issue in proper perspective.

proscription against exclusively 'racial' employment discrimination to these groups of potential discriminatees." At 787–788.

Such reasoning is persuasive; the court believes our Circuit Court would approve its adoption, because the issue of the non-availability of § 1981 was never addressed in *Chicano Police Officer's Ass'n v. Stover,* 526 F. 431 (10th Cir. 1975).[7]

It is significant, however, that in *Chicano Police* (and in *Gomez*) allegations of racial discrimination were made.

As has been noted, the complaint herein does not delineate any individual plaintiff's grievances. The fact that the question is not argued in plaintiffs' brief suggests that Enriquez may not be prepared either to plead or prove that discrimination allegedly suffered as a Spanish-surnamed American was motivated also by racial animus. However, viewing the brief in a light most favorable to non-movants, perhaps it could reasonably be said the statement that it is "fundamental" that one of Spanish descent is non-caucasian is an attempt to make such an assertion.

Of course, this court will not take judicial notice of the "non-caucasianness" of persons of Spanish descent. On the other hand, neither could the court take judicial notice of the "caucasianness" of persons of Spanish descent. The issue is not susceptible of resolution on the present record.

This case is set for trial July 25, 1977. The court directs that a pretrial order be prepared to substitute for the pleadings. Within fifteen days of this date, defendants are to be provided with a list of each plaintiff's contentions, and witnesses[8] and exhibits in chief. Within fifteen days thereafter defendants are to return same accompanied by their contentions and list of witnesses and exhibits in chief. Plaintiffs will prepare the pretrial order and file it on or before July 18, 1977.

Defendants' motion is hereby granted in part, and taken under advisement in part pending submission of the pretrial order, all in accordance with the foregoing.

IT IS SO ORDERED.

---

7. Vacated and remanded for reconsideration on other grounds, 426 U.S. 944, 96 S.Ct. 3161, 49 L.Ed.2d 1181 (1976). On remand (and remanding to the trial court), 552 F.2d 918 (1977).

8. If the witness has not been deposed, a resume of the testimony he or she is expected to give must be included. The same applies to defendants' witnesses.