Katherine HIDUCHENKO, Plaintiff,

v.

MINNEAPOLIS MEDICAL AND DIAGNOSTIC CENTER, LTD., Stuart H. Borken, Benjie Goldfarb, Neil Hoffman, Elliot M. Latts, Burton S. Schwartz, and Harold M. Wexler, Defendants.

No. 4–78 Civ. 468.

United States District Court, D. Minnesota, Fourth Division.

March 23, 1979.

Timothy R. Thornton, Rider, Bennett, Egan & Arundel, Minneapolis, Minn., for plaintiff.

Frederick E. Finch, Frederikson, Byron, Colborn, Bisbee & Hansen, Minneapolis, Minn., for defendants.

## MEMORANDUM ORDER

ALSOP, District Judge.

On October 23, 1978, plaintiff commenced this action alleging a six-count complaint against defendants. Those counts sought relief pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981 and the Minnesota Human Rights Act, as amended, Minn.Stat. § 363.01 *et seq.* Additionally, plaintiff sought relief pursuant to a number of state common law remedies.

On December 4, 1978, defendants moved the court to dismiss plaintiff's complaint pursuant to Rule 12 of the Fed.R.Civ.P. on the basis that plaintiff's cause of action under 42 U.S.C. § 1981 fails to state a claim upon which relief can be granted, that there is a lack of subject matter jurisdiction for plaintiff's Title VII causes of action and that the remaining state claims provide no independent basis for federal jurisdiction.

On January 12, 1979, plaintiff moved the court for an order granting her leave to file an amended complaint. In her amended complaint, plaintiff seeks to include causes of action for violations of both federal and Minnesota securities laws. Memoranda have been submitted by both parties and oral argument was heard on February 2, 1979.

### Facts

The plaintiff, Dr. Katherine Hiduchenko, began employment in 1970 as a physician for the defendant Minneapolis Medical and Diagnostic Center, Inc. (MMDC), a Minnesota professional corporation engaged in the practice of internal medicine. On June 23, 1978, plaintiff was notified of the fact that her employment with MMDC would be terminated effective December 22, 1978.

Plaintiff became a shareholder of MMDC in September, 1974, when she entered into a Stock Purchase Agreement. By the terms of the Agreement, Article 3.1(01), plaintiff is required to sell all her shares of stock in MMDC to the corporation upon termination of her employment with the defendant. Article 4 of the Stock Purchase Agreement provides the purchase price which the corporation is to pay for the stock upon resale to the corporation. Pursuant to the Stock Purchase Agreement, MMDC must pay to the plaintiff the "book value" of her shares of stock.

### Motion To Amend Complaint

In Count VII of her proposed amended complaint, plaintiff asserts causes of action for violations of § 12(2) of the Securities Act of 1933 and § 10(b) of the Securities and Exchange Act of 1934. In Count VIII of the proposed amended complaint, plaintiff asserts a cause of action for violation of Minn.Stat. § 80A.01.

Rule 15 of the Fed.R.Civ.P. provides that a party may amend his pleadings after a responsive pleading is served by leave of court and that leave shall be freely given when justice so requires. However, if the proposed amendment clearly is frivolous or advances a claim that is legally insufficient on its face, the court may deny leave to amend. 6 Wright & Miller, *Federal Practice & Procedure*, § 1487 and *Norbeck v. Davenport Community School District*, 545 F.2d 63 (8th Cir. 1976).

■ Minn.Stat. § 319A.11(2) clearly provides that the Minnesota Securities Act, Minn.Stat. Ch. 80A, is not applicable to and does not govern any transactions involving shares of a professional corporation. Plaintiff affirmatively alleges in her amended complaint that the defendant MMDC is a Minnesota professional corporation. Therefore, plaintiff's cause of action for violation of Minn.Stat. § 80A contained in Count VIII of her proposed amended complaint patently fails to state a prima facie case against the defendants.

■ Section 12(2) of the 1933 Act is designed to protect purchasers of securities from fraud by sellers of securities. The language contained in § 12(2) indicates that § 12(2) provides a remedy only to purchasers of securities. The § 12(2) cause of action is alleged in connection with the forced sale by plaintiff after her termination of employment and not in connection with the original purchase of stock by the plaintiff in 1974. Consequently, the plaintiff is a seller and does not have any remedy under § 12(2) of the 1933 Securities Act.

■ Section 10(b) and Rule 10b–5 of the 1934 Securities Act require that the alleged fraud, misrepresentations or omissions must be made in connection with the purchase or sale of a security. Causation in fact is an essential element of a private cause of action for securities fraud under Rule 10b–5. *St. Louis Union Trust Co. v. Merrill Lynch, et al.*, 562 F.2d 1040 (8th Cir. 1977), *cert. denied*, 435 U.S. 925, 98 S.Ct. 1490, 55 L.Ed. 519.

Plaintiff was contractually bound to sell her shares to MMDC upon termination of her employment. Dr. Hiduchenko had no choice in this matter at the time of the operative events in the case. Clearly, the alleged fraud could not have influenced a reasonable person's decision to sell her stock to MMDC after termination when that person had previously committed herself to such a sale. *Ketchum v. Green*, 415 F.Supp. 1367 (W.D.Pa.1976), *aff'd*, 557 F.2d 1022 (3d Cir. 1977).

■ It appears to the court that the plaintiff's proposed Rule 10b–5 cause of action goes to the propriety of plaintiff's termination of employment and not to the sale or purchase of her stock. Even if it is assumed that MMDC committed fraud or made misrepresentations when it terminated plaintiff's employment, the employment agreement, which contains stock repurchase provisions, operates as an independent and intervening cause of the forced sale of plaintiff's stock. As a result, the alleged fraud or misrepresentations were not in connection with and did not cause the sale of stock by the plaintiff and plaintiff does not have any remedy under Rule 10b–5.

The court concludes that the three causes of action asserted by plaintiff in her proposed amended complaint are frivolous and advance claims which are legally insufficient on their face.

### Motion To Dismiss The § 1981 Cause Of Action

Defendants moved to dismiss plaintiff's cause of action under 42 U.S.C. § 1981 for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Fed.R.Civ.P.

42 U.S.C. § 1981 requires that all citizens be given the same rights to contract as enjoyed by white citizens. 42 U.S.C. § 1981 provides a remedy for both U.S. citizens and aliens who have been discriminated against on the basis of race. *Guerra v. Manchester Terminal Corp.*, 498 F.2d 641 (5th Cir. 1974). Discrimination on the basis of national origin is not prohibited by § 1981. *Enriquez v. Honeywell*, 431 F.Supp. 901 (W.D.Okl.1977) and *Gradillas v. Hughes Aircraft Co.*, 407 F.Supp. 865 (D.Ark.1975).

■ The plaintiff is a Ukranian-born naturalized American citizen. The defendants are all members of the Caucasian race. A careful examination of the plaintiff's complaint reveals that she claims to be protected by § 1981 based on her national origin and her former alienage. Plaintiff's asserted cause of action under § 1981 contains no claim of discrimination based on race and there is no allegation that Ukranians are not of the white or caucasian race.

■ Plaintiff's allegations would not be determinative in any event, since it is apparent that Ukranians are not considered a race separate from that of the caucasian race. *Budinsky v. Corning Glass Works*, 425 F.Supp. 786 (W.D.Pa.1977). Therefore, Ukranians do not have a cause of action under § 1981 when alleging racial discrimination on the part of other caucasians.

### Motion To Dismiss The Title VII Causes Of Action

Plaintiff filed administrative claims with the Equal Employment Opportunities Com-

mission (EEOC) and the Minnesota Department of Human Rights (MDHR) at the same time, on or about October 2, 1978. She received a right-to-sue letter from the EEOC eleven days later, on October 13, 1978. Ten days after that, on October 23, 1978, plaintiff filed her complaint in federal district court. Plaintiff's administrative charge filed with the MDHR was not withdrawn due to an oversight on the part of plaintiff's counsel.

Defendants contend that the October 13, 1978 right-to-sue letter is improper for two reasons. First, defendants contend that the October 13, 1978 right-to-sue letter is invalid because the EEOC failed to defer to the appropriate state agency for a period of 60 days as required by § 706(c) of Title VII, 42 U.S.C. § 2000e–5(c). Secondly, defendants contend that the October 13, 1978 right-to-sue letter is invalid because it was issued before the expiration of the 180-day period referred to in § 706(f)(1) of Title VII, 42 U.S.C. § 2000e–5(f)(1).

When a state has created an agency that is empowered to act with respect to claims for discrimination that are also cognizable before the EEOC, then the latter agency must defer to its state counterpart. Section 706(c) of Title VII, 42 U.S.C. § 2000e–5(c) expressly provides that the state must be allowed a 60-day period in which to act. Minnesota has created the type of agency to which the EEOC and federal district courts are required to defer under Title VII.

The court is of the opinion that failure to comply with the deferral provisions of Title VII is a jurisdictional defect. The existence and service of a properly issued right-to-sue letter is a jurisdictional prerequisite to plaintiff's suit. *Gradillas v. Hughes Aircraft Co.*, 407 F.Supp. 865 (D.Ariz.1975); *Faraci v. Hickey-Freeman Co., Inc.*, 404 F.Supp. 1229 (D.N.Y.1975), and *White v. Dallas Independent School District*, 581 F.2d 556 (5th Cir. 1978).

Section 706(f)(1), 42 U.S.C. § 2000e–5(f)(1) provides that the EEOC may issue a right-to-sue letter to an aggrieved person if within 180 days after the Commission's proper assumption of jurisdiction, concilia-

tion with the alleged wrongdoer has not been obtained. Here, the EEOC issued a to-sue letter a mere eleven days after the plaintiff filed her charge of discrimination.

Failure of the plaintiff to defer to the EEOC for 180 days after filing her complaint with the Commission is a jurisdictional defect requiring dismissal of her action brought in this court. *Budreck v. Crocker National Bank*, 407 F.Supp. 635 (N.D.Cal.1976) and *Weise v. Syracuse University*, 522 F.2d 397 (2d Cir. 1975).

The court is of the view that this result is dictated not only by the express conditional language of the statute itself, but also by the legislative history surrounding Title VII. The 180-day requirement was mandated by Congress in an attempt to promote the resolution of disputes by informal conciliation rather than by litigation and to expedite the handling of complaints. This judgment on the part of Congress ought to be followed by the courts.

Upon the foregoing,

IT IS ORDERED That the plaintiff's motion under Rule 15 of the Fed.R.Civ.P. for an order granting her leave to file an amended complaint herein be and hereby is denied in all respects.

IT IS FURTHER ORDERED That the motion of the defendants to dismiss plaintiff's § 1981 cause of action, contained in Count III of the complaint, for failure to state a claim upon which relief can be granted (Fed.R.Civ.P. 12(b)(6)) be and hereby is granted and such cause of action is hereby dismissed.

IT IS FURTHER ORDERED That the motion of the defendants to dismiss plaintiff's Title VII causes of action, contained in Counts I and II of the complaint, for lack of subject matter jurisdiction (Fed.R.Civ.P. 12(b)(1)) be and hereby is granted and such causes of action are hereby dismissed for lack of subject matter jurisdiction.

IT IS FINALLY ORDERED That the motion of the defendants to dismiss plaintiff's remaining pendent state claims on the ground that there is no basis for the initial

**108**

exercise of federal jurisdiction be and hereby is granted and such claims are hereby dismissed for lack of subject matter jurisdiction.