FORTY–EIGHT INSULATIONS, INC., an Illinois Corporation, Plaintiff,

v.

JOHNS–MANVILLE PRODUCTS CORPORATION, Johns-Manville Sales Corporation, Asbestos Corporation, Ltd., and Cary Canadian Mines, Ltd., Defendants.

No. 77 C 3822.

United States District Court, N. D. Illinois, E. D.

June 14, 1979.

388

William C. Murphy, Richard L. Horwitz, Reid, Ochsenschlager, Murphy & Hupps, Aurora, Ill., for plaintiff.

Paul R. Gary, William V. Johnson, William D. Maddux, Ltd., Chicago, Ill., for defendants Johns-Manville Products Corp. and Johns-Manville Sales Corp.

Robert L. Byman, Jenner & Block, Chicago, Ill., for defendant Asbestos Corp., Ltd.

Michael P. Connelly, Sloan & Connelly, Chicago, Ill., for defendant Cary Canadian Mines, Ltd.

## MEMORANDUM DECISION

MARSHALL, District Judge.

In this civil action, the plaintiff, Forty-Eight Insulations, Inc. (Forty-Eight), has brought suit for common law indemnity against the defendants, Johns-Manville Products Corporation, Johns-Manville Sales Corporation, Asbestos Corporation, Ltd., and Cary Canadian Mines, Ltd. The jurisdiction of this court is based on diversity of citizenship under 28 U.S.C. § 1332. Plaintiff's complaint alleges that it has been named a defendant in 188 personal injury suits throughout the United States.[1] Plaintiff seeks indemnity from the defendants for all liabilities which it has incurred. In addition, plaintiff seeks a declaratory judgment as to its right to indemnity from these defendants for any liability it may incur in the future. Each of the four defendants moved to dismiss. We denied these motions

on April 18, 1978. Defendants' motion to reconsider that decision is now pending.

Plaintiff manufactures insulation block and insulation cement. Until 1970, some of these products contained asbestos as a component part. Plaintiff purchased asbestos from each of the defendants and incorporated the asbestos, unchanged, into its insulation products. Plaintiff alleges that each of the defendants sold and delivered asbestos to plaintiff's plant in Kane County, Illinois. Forty-Eight Insulations has been named as a defendant in personal injury suits brought by persons who have been exposed to the asbestos contained in Forty-Eight Insulations' insulation products. Allegedly as a result of the exposure to asbestos, the personal injury plaintiffs have contracted various diseases. The majority of these victims are workers who install insulation products. All of these suits contain a count based on a strict liability in tort theory.[2] Forty-Eight alleges that it has had to incur the cost of defending these suits and that it "has been and will be compelled to pay reasonable sums to settle and conclude such actions." Plaintiff contends that its liability to the personal injury plaintiffs is dependent upon a showing that the asbestos Forty-Eight purchased from defendants and incorporated unchanged into its products was unreasonably dangerous. Therefore plaintiff seeks indemnity from the defendants for the liabilities it has already incurred and a declaratory judgment of its right to indemnity for all future liability arising out of the personal injury suits.

All four defendants filed motions to dismiss plaintiff's complaint. Defendants Asbestos Corporation, Ltd. and Cary Canadian Mines, Ltd. challenged this court's *in personam* jurisdiction over them. All defendants moved to dismiss the complaint for failure to state a claim. The latter chal-

1. Since the filing of the complaint, the number of underlying tort actions against Forty-Eight Insulations has increased continuously and totals 517 as of September 5, 1978. *See* Plaintiff's Brief in Opposition to Defendants' Motion for Rehearing at 2.

2. Manufacturers of asbestos and sellers of products containing asbestos have been held liable under this theory of products liability in *Borel v. Fiberboard Paper Products Corp.*, 493 F.2d 1076 (5th Cir. 1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974) and *Karjala v. Johns-Manville Products Corp.*, 523 F.2d 155 (8th Cir. 1975).

lenge has two prongs: first, a declaratory judgment would be improper in this action because no "actual controversy" exists between the parties as required by 28 U.S.C. § 2201; and second, because of the complex and uncertain nature of the indemnity sought here, this court should exercise its discretion to refuse to entertain the action.

We turn first to the question of *in personam* jurisdiction over two of the defendants. In actions based on diversity jurisdiction the federal courts must follow state rules regarding the exercise of *in personam* jurisdiction over non-resident defendants. Federal Rule of Civil Procedure 4(d)(7). In the instant case, plaintiff seeks to sustain jurisdiction under the Illinois Long-Arm Statute, Ill.Rev.Stat., ch. 110, § 17. Section 17 provides in pertinent part:

(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, . . . to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts: . . .

(a) The transaction of any business within this State; . . .

This exercise of personal jurisdiction over non-resident defendants must be consistent with the requirements of due process. *Rosenthal & Co. v. Dodick*, 365 F.Supp. 847, 849 (N.D.Ill.1973). Due process requires the existence of sufficient "minimum contacts" between the non-resident defendant and the forum state so that the exercise of personal jurisdiction is consistent with traditional concepts of fair play and substantial justice. *Hanson v. Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *International Shoe Co. v. State of Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945). We must determine whether the defendants have by some voluntary act or conduct purposely availed themselves of the privilege of conducting business within Illinois and thus invoked the benefits and protection of Illinois law. *Hanson, supra*, 357 U.S. at 253, 78 S.Ct. 1228; *O'Hare International Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir. 1971).

Defendant Asbestos Corporation has filed the affidavit of its Secretary and General Counsel, Jeannine M. Rousseau, in support of its jurisdictional challenge. According to Rousseau's affidavit, Asbestos Corporation is a Canadian corporation which mines asbestos ore in Canada. All sales are made F.O.B. Thetford Mines, Quebec, Canada. Asbestos Corporation is not registered as a foreign corporation in Illinois, has no authorized agent in Illinois, maintains no office in Illinois, and has never been listed in any telephone directory in Illinois. It has no employees in Illinois, owns no property in the state, and has not used the Illinois courts to recover any debts.

Defendant Cary Canadian Mines has also filed an affidavit in support of its jurisdictional challenge. The affidavit of A. H. Bagenstose, Vice-President of Sales and Marketing for Cary Canadian, states that Forty-Eight purchased cyrstotile asbestos fiber from Cary Canadian during the years 1965–1970. All sales were F.O.B. from the mines of Cary Canadian at East Broughton, Quebec, Canada. Delivery was by common carrier with Forty-Eight bearing the expense and risk of transportation. All billings were made by mail from East Broughton and payments were received by mail at the same location.

Plaintiff contends that the sales between itself and these defendants were consummated in Illinois and that defendants did transact business in Illinois. In support of these allegations, plaintiff offers the affidavit of Arthur H. Mehlhorn, purchasing agent of the plaintiff between the years 1947 and 1973. Mehlhorn states that, while he was acting as the purchasing agent of Forty-Eight, he entered into contracts for the purchase of asbestos with salesmen or agents for both Cary Canadian and Asbestos Corporation. Further, he states that these contracts were entered into at Forty-Eight's office in North Aurora, Kane County, Illinois.

Before determining whether the facts alleged are sufficient to sustain the exercise of personal jurisdiction, we must first indi-

cate what facts are missing from the affidavits of the parties. Although the affidavit submitted by the plaintiff states that the contracts were consummated in Illinois by "means including the transaction of business" between plaintiff and defendant, the affidavit does not state that the contracts were negotiated in Illinois or that the defendants solicited plaintiff's business in Illinois. The defendants' affidavits are completely silent on the issue of the negotiation and execution of the contracts.

A recent Seventh Circuit decision guides our resolution of the defendants' jurisdictional challenge. In *Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc.*, 597 F.2d 596 (7th Cir. 1979), the court determined whether the due process clause allowed Wisconsin to use its long arm statute to assert personal jurisdiction in a contract case over a non-resident defendant that had conducted no activities in Wisconsin. In *Lakeside*, the plaintiff, a Wisconsin corporation, sued the defendant West Virginia corporation on a contract for the sale of goods. The contract was solicited by plaintiff in West Virginia and negotiated in West Virginia and by interstate mail and telephone. The goods were manufactured by plaintiff in Wisconsin and shipped F.O.B. Milwaukee. After defendant withheld part of the purchase price because the goods were allegedly defective in certain respects, plaintiff brought suit in Wisconsin. After the suit was removed to federal court and resolved in plaintiff's favor, the defendant appealed.

The Court of Appeals held that the defendant did not have minimum contacts with Wisconsin sufficient to confer jurisdiction. The court held that performance of contractual obligations by the plaintiff in the forum state was not enough, by itself, to sustain jurisdiction. The court noted that the contract left plaintiff in control as to where it would manufacture the goods, which precluded an inference that defendants had purposefully availed itself of the privilege of conducting activities within the forum state. In addition, the defendant had no other relationship with the state apart from the isolated transaction with plaintiff. Further, the court stated that the cause of action did not arise from "instate effects" of the contract nor were the events in Wisconsin dangerous to people or things, so that Wisconsin's interest in entertaining the action was minimal. Finally, the court held that the contract's specification of F.O.B. Milwaukee, the defendant's communication with plaintiff in Wisconsin by interstate mail and telephone, and the sending of a purchase order to Wisconsin did not establish minimum contacts with Wisconsin, because "formalities of contract execution are not determinative for purposes of jurisdiction." At 604.

■ Applying the contacts discussed by the Seventh Circuit to the instant case, we note first that the place that the contracts were signed is a formality of contract execution which is no more significant than had the parties executed the contract by use of the mails or the telephone. Furthermore, the defendants' affidavits indicate that they had no contacts with Illinois which would support an inference that the defendants were doing business in Illinois. The instant case is distinguishable from *Lakeside*, however, in that the defendants here sold asbestos to plaintiff over a period of years rather than, as in *Lakeside*, in an isolated transaction. Moreover, the contract here involves the sale of an allegedly unreasonably dangerous substance to be used in products manufactured in Illinois, so that Illinois' interests would be implicated to a greater extent than were Wisconsin's interests in *Lakeside*. Furthermore, if the defendants here had solicited the plaintiff's business in Illinois and negotiated the contracts in Illinois, then we believe that this case would be sufficiently distinguishable from *Lakeside* for us to conclude that defendants did "purposefully avail [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Hanson v. Denckla, supra*, 357 U.S. at 253, 78 S.Ct. at 1240. *See Scovill Manuf. Co. v. Dateline Electric Co.*, 461 F.2d 897, 900 (7th Cir. 1972). At this time, however, we cannot determine which party did the soliciting

and where the solicitation and negotiation took place. Therefore, because we must draw all inferences in favor of the nonmovant, and because of the long course of dealings between plaintiff and the defendants and the nature of the product sold, we will deny the motion to dismiss. Our decision does not bar defendants from perfecting their motions by moving for a hearing on the issue of personal jurisdiction at which defendants may produce witnesses and other relevant evidence in support of their motion. *Cohan v. Municipal Leasing Systems, Inc.*, 379 F.Supp. 1022, 1027 (N.D.Ill. 1974).

Forty-Eight seeks two distinct forms of relief in this action. First, it seeks common law indemnity for liabilities it has already incurred and second, a declaratory judgment as to its right of indemnity for any future liability. This relief will be determined by application of the law of the forum as mandated in diversity cases under *Erie v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We must first determine what state law is applicable to plaintiff's request for indemnity for its existing liability.

Defendants argue that the laws of the various states applied in each of the underlying tort actions will control the action for indemnity as to each tort action. Under this theory, each action for indemnity would be governed by the law of the state applied in the underlying tort action. Plaintiff, however, contends that Illinois law may control in this indemnity suit regardless of the law applied in the underlying tort action, arguing that Illinois has the "most significant relationship" to each indemnity action.

▪ In a diversity action, the choice of law rules of the state in which the district court is located apply. *Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1947); *Hamilton Die Cast, Inc. v. United States F. & G. Co.*, 508 F.2d 417, 418 (7th Cir. 1975). In determining the applicable law in tort cases, the Illinois courts have abandoned the common law approach, which mandated that the law of

the place of the injury governed, and have adopted the "most significant relationship" approach. *Ingersoll v. Klein*, 46 Ill.2d 42, 45, 262 N.E.2d 593, 595 (1970). In *Ingersoll*, the Illinois Supreme Court rejected the common law approach because of its rigidity in failing to consider the interests of jurisdictions other than that where the injury occurs. 46 Ill.2d at 46, 262 N.E.2d at 595. Thus, the *Ingersoll* court held:

> [T]he local law of the State where the injury occurred should determine the rights and liabilities of the parties, unless Illinois has a more significant relationship with the occurrence and with the parties, in which case, the law of Illinois should apply. 46 Ill.2d at 45, 262 N.E.2d at 595.

Consequently, as to the indemnity claims we must determine whether Illinois has a "more significant relationship" to the parties before us and the occurrences giving rise to the claimed indemnity than the jurisdictions where the injuries to the underlying tort plaintiffs occurred.

▪ Section 145 of the Second Restatement of Conflicts provides the framework for determining which forum has the most significant relationship to the occurrences underlying the cause of action. *See Ingersoll*, 46 Ill.2d at 47–48, 262 N.E.2d at 596. The forum state should consider (1) the place of injury, (2) the place where the conduct causing injury occurred, (3) the domicile, place of incorporation, and place of business of the parties, and (4) the center of gravity of the parties' relationship. Section 145 also provides that in determining the importance of these contacts, the forum should consider the issues, the nature of the tort, and the purposes of the tort rules of the interested states. Thus the contacts test is not an end in itself to be applied mechanically, but rather is a means reliably calculated to insure that the interests of the state with the most significant relationship to the occurrences will be protected. *See* Restatement of Conflicts 2d, § 145 Comment C.

▪ With these principles in mind, we will apply the contacts test to the instant case. In determining where the putative

indemnitee here, Forty-Eight, suffered injury, we first note that Forty-Eight suffered no injury until an underlying tort suit plaintiff established a right to recover from Forty-Eight either through litigation or settlement. Thus the place of injury here is any state in which one of the underlying tort plaintiffs handled and was injured by plaintiff's products containing asbestos. The place of injury contact is important because "persons who cause injury in a state should not ordinarily escape liabilities imposed by the local law of that state on account of the injury." Restatement of Conflicts 2d, § 145, Comment e. When, however, a nonresident defendant causes injury in a state to a nonresident plaintiff, the place of injury is fortuitous and its importance in the choice of law analysis is attenuated. See Blazer v. Barrett, 10 Ill. App.3d 837, 295 N.E.2d 89 (2d Dist. 1973). This is especially true here because the injury occurred in a particular state only because the last event necessary to make Forty-Eight liable occurred there, and because the defendants had only an indirect connection with the underlying tort suit states.

The location of the second contact, the place of the conduct which caused injury, is unclear. A determination of where conduct occurred is difficult in a strict liability case, because the defendant commits no overt act which directly causes injury to the victims. The determination is further complicated here because the injury we are concerned with is the injury to the putative indemnitee, Forty-Eight. The "conduct," if it can be characterized as such, was the delivery by defendants of asbestos, an allegedly dangerous substance, for inclusion in plaintiff's insulation products. This occurred in Illinois. Even if all conduct by defendants terminated before the asbestos reached Illinois, the underlying tort suit states have no interest or contact with conduct causing injury to plaintiff. Thus the conduct causing injury contact leans toward Illinois.

■ The third contact is the domicile, place of incorporation, and place of business of the parties. This contact is significant because of a state's interests in fully compensating its residents who are tort victims, in insuring that its residents comply with its tort standards, and possibly in insulating a domiciliary from liability. See Pancotto v. Sociedade de Safaris de Mocambique, S.A.R.L., 422 F.Supp. 405 (N.D.Ill.1976). The interest in protecting victims of torts takes on increased importance in strict liability cases, inasmuch as the major policies underlying the imposition of strict liability are the compensation of users damaged by the product and the imposition of loss on the one who created the risk and reaped the profit. Suvada v. White Motor Co., 32 Ill.2d 612, 210 N.E.2d 182 (1965). The courts in strict liability cases thus focus more on compensating victims out of the deepest pockets than on determining fault. To the extent that these interests are present here, the contact with Illinois is most significant. The underlying tort plaintiffs are not parties here. Moreover, the interests of the underlying tort suit states are not implicated in the indemnity action. These interests are somewhat analogous to the interests of a state which is the place of an injury to a nonresident plaintiff caused by a nonresident defendant. In that case, the state has no interest in insuring compensation of the victim or in punishing the tortfeasor. See, e.g., Milton v. Britton, 19 Ill.App.3d 922, 312 N.E.2d 303 (1st Dist. 1974). In the instant case, the interest of the underlying tort suit states in the fair and full compensation to tort victims within their states will be protected apart from the indemnity action by the completion of the underlying tort suits. See Spector v. West Elizabeth Lumber, 37 F.R.D. 539 (W.D.Pa. 1965). Moreover, plaintiff is an Illinois corporation with its principal place of business in Illinois. Illinois thus has the interest in determining any distribution of fault or allocation of responsibility between the Illinois corporation plaintiff and the defendants. Thus the third contact points to Illinois.

Finally, the center of gravity of the relationship of the parties to the indemnity suit is Illinois. Asbestos was delivered by defendants to plaintiff in Illinois and then shipped out of Illinois as a component part

of plaintiff's insulation products. Moreover, by plaintiff's account, the sales between plaintiff and defendants were consummated in Illinois and may have been solicited and negotiated there as well. Thus the relationship of the parties was centered in Illinois.

We conclude that Illinois as the place of incorporation and principal place of business of plaintiff, the place of conduct causing injury, and the center of the relationship of the parties, has the most significant relationship to the indemnity action, and Illinois law should control. *See Semmelroth v. American Airlines*, 448 F.Supp. 730, 732 (E.D.Ill.1978).

Under Illinois law, an action for indemnity may be commenced under three circumstances. First, the defendant may bring a third-party action in the original action against the potential indemnitor. Ill. Rev.Stat., ch. 110, § 25(2). Second, the defendant may file a cross-claim for indemnity against a co-defendant in the original action. *Manley v. Tri-City Grocery Co.*, 13 Ill.App.3d 374, 375, 299 N.E.2d 806, 808 (5th Dist. 1973). Third, the defendant may await a finding of its liability in the original action and then file an independent action for indemnity against the alleged indemnitor. *E.g., Security Ins. Co. of Hartford v. Mats*, 13 Ill.App.3d 11, 17–18, 298 N.E.2d 725, 730–31 (2d Dist. 1973). An indemnity action is maintainable in a separate action even if the underlying action was settled, so long as the settlement was in reasonable anticipation of personal liability. *St. Paul Fire & Marine Ins. Co. v. Michelin Fire Corp.*, 12 Ill.App.3d 165, 298 N.E.2d 289 (1st Dist. 1973). Under Illinois law, however, an action for indemnity does not accrue until the indemnitee has either been found liable in or has settled the underlying action. *Warzynski v. Village of Dolton*, 23 Ill.App.3d 50, 61, 317 N.E.2d 694, 701–02 (1st Dist. 1974), *rev'd on other grounds*, 61 Ill.2d 475, 338 N.E.2d 25 (1975); *Klatt v. Commonwealth Edison Co.*, 55 Ill. App.2d 120, 136, 204 N.E.2d 319, 327–28 (2d Dist. 1964), *rev'd in part, aff'd in part*, 33 Ill.2d 481, 211 N.E.2d 720 (1965). Thus

plaintiff's request for indemnity is maintainable in this separate action only for liability already incurred. Defendants' motion to reconsider is denied as to indemnity in cases in which plaintiff has already incurred liability.

Plaintiff's second form of requested relief is a declaratory judgment of its right to indemnity from these defendants for all future liability it incurs in the pending tort suits and any future suits not yet filed. Defendants challenge the propriety of declaratory relief in this case, arguing that no "actual controversy" as required by the Declaratory Judgment Act exists between the parties and that the complicated and vague nature of this case warrants our refusal to entertain this action.

Plaintiff's request for declaratory relief is predicated on 28 U.S.C. § 2201. That statute provides, in pertinent part:

> In the case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration should have the force and effect of a final judgment or decree and shall be reviewable as such. 28 U.S.C. § 2201.

The presence of an "actual controversy" is essential to a court's jurisdiction in a declaratory judgment action. An "actual controversy" must exist at the time the complaint was filed, *Super Products Corp. v. D. P. Way Corp.*, 546 F.2d 748, 752 (7th Cir. 1976), and continuously throughout the prosecution of the suit. *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). The controversy requirement is essentially a Congressional recognition of the limitation of federal judicial power contained in the case or controversy provision of Article III, Section 2 of the Constitution. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–240, 57 S.Ct. 461, 81 L.Ed. 617 (1937). The standard for finding a justiciable "case or controversy" is no less demanding in a declaratory judgment action than

in any other type of action. *Federation of Labor v. McAdory*, 325 U.S. 450, 461, 65 S.Ct. 1384, 89 L.Ed. 1725 (1944). A federal court has no power to issue advisory opinions, *Coffman v. Breeze Corps.*, 323 U.S. 316, 324, 65 S.Ct. 298, 89 L.Ed. 264 (1945), nor to decide abstract or hypothetical questions, *Electric Bond Co. v. S. E. C.*, 303 U.S. 419, 443, 58 S.Ct. 678, 82 L.Ed. 936 (1938). No bright line of demarcation exists between an action presenting a justiciable "case or controversy" and one presenting a hypothetical or abstract question. The Supreme Court has recognized that the difference between the two is largely one of degree. *E.g., Maryland Casualty Co. v. Pacific Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

To determine whether a "justiciable case or controversy" exists, the Supreme Court has stated:

> The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. *Aetna, supra*, 300 U.S. at 241, 57 S.Ct. at 464.

*See also Maryland Casualty Co. v. Pacific Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). *Accord, Super Products Corp. v. D. P. Way Corp.*, 546 F.2d 748, 753 (7th Cir. 1976).

We must determine whether the allegations contained in the plaintiff's complaint satisfy this test. A Seventh Circuit decision provides guidance in this determination. In *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165 (7th Cir.), *cert. denied*, 395 U.S. 959, 89 S.Ct. 2100, 23 L.Ed.2d 745 (1969), the plaintiff, a general contractor, sought a declaration that it was not liable to employees injured in the collapse of a platform on which they were standing. In a second count, plaintiff sought a declaratory judgment of its right to indemnity from the masonry subcontractor for any amount which may be recovered against plaintiff by

the injured workers. The district court dismissed both counts of the complaint and the court of appeals affirmed. In affirming the dismissal of the count for a declaration of indemnity the *Cunningham* court stated there was no adverse relationship between the parties until the general contractor was held liable in the underlying tort action. 407 F.2d at 1169. Moreover, reasoned the court, no immediate controversy existed between the parties because the general contractor's future liability to the injured workers was too uncertain to sustain an action for declaratory relief. 407 F.2d at 1169. Thus *Cunningham* states the general proposition that declaratory relief as to indemnity is unavailable if liability in the underlying action has not been established. *See also American Fidelity & Cas. Co. v. Pennsylvania T. & F. Cas. Ins. Co.*, 280 F.2d 453 (5th Cir. 1960); *Nat'l Valve & Mfg. Co. v. Grimshaw*, 181 F.2d 687 (10th Cir. 1950); *Great Northern Paper Co. v. Babcock & Wilcox Co.*, 46 F.R.D. 67 (N.D.Ga.1968).

Plaintiff argues that the *Cunningham* reasoning is not applicable here. First, plaintiff argues that *Cunningham* is distinguishable because there the basis for the underlying liability was negligence, and not, as here, strict liability. The strict liability theory of liability involved here, however, makes the ultimate liability of Forty-Eight to the personal injury plaintiffs no more certain than had those plaintiffs proceeded, as in *Cunningham*, on a negligence theory.

Second, Forty-Eight argues that here, unlike *Cunningham*, it, the putative indemnitee, has already been held liable to certain plaintiffs in some of the underlying tort suits. We are concerned, however, with a declaratory judgment of the right to indemnity only as to those cases still pending or not yet filed. The outcome of terminated actions is not relevant to this inquiry unless the results of those actions make plaintiff's liability in the pending or future actions certain enough to support a declaratory judgment action.

Plaintiff argues that the results of terminated actions do make its future liabil-

ity certain because collateral estoppel as to issues decided against plaintiff in terminated cases will preclude litigation of those issues in future or pending cases. Plaintiff's memorandum in opposition to the motion to reconsider states that of the 517 suits filed against Forty-Eight as of September 5, 1978, 25 had been settled, nonsuited or dismissed. Only three had been tried, and all three resulted in verdicts favorable to Forty-Eight. Thus there has been no showing that collateral estoppel will operate against plaintiff. Every litigated case has been resolved in plaintiff's favor. We cannot now determine whether plaintiff will be estopped from litigating issues underlying settlement agreements. Collateral estoppel should not apply to settlements unless the parties clearly "intended that the matters concluded in the particular litigation should be concluded between themselves in all other situations." 1B *Moore's Federal Practice*, ¶ 0.444 at 4003. We cannot believe that plaintiff drafted its settlement agreements so as to preclude relitigation in hundreds of future cases.

██ Moreover, even if collateral estoppel were to operate, plaintiff's liability in the pending or future cases would not thereby be determined. Each personal injury case would have individual issues which could not be precluded by earlier actions. Before liability could be established, each personal injury plaintiff would have to prove causation. Proof of causation would require evidence regarding the length and type of exposure to asbestos, the physical characteristics of the injured person, and technical medical evidence. All of these issues would be completely unique to each personal injury plaintiff. *See In Re Asbestos and Asbestos Insulation Material Products Liability Litigation*, 431 F.Supp. 905 (Jud.Pan.Mult.Lit.1977). Thus, regardless of the existence of terminated cases, it is not certain as to the pending cases that plaintiff will be compelled to pay any judgment for which defendants will be liable as indemnitors. *See Cunningham, supra* at 1169. *See also Nat'l Valve Co. v. Grimshaw, supra*, at 689–90 (possibility of reversal on appeal of underlying suit defeated case or controversy in indemnity action).

Finally, plaintiff argues that the sheer number of cases indicates that plaintiff will undoubtedly eventually be liable to someone, and that therefore plaintiff has a "reasonable apprehension of liability" sufficient to support an action for declaratory relief. *See Diamond Shamrock Corp. v. Lumberman's Mutual Casualty Co.*, 416 F.2d 707, 709 (7th Cir. 1969). We cannot agree with this conclusion, however. Certainly as to any cases not yet pending, which are included in plaintiff's prayer for declaratory relief, plaintiff has no idea whether it will be liable. *See Tilley Lamp Co. v. Thacker*, 454 F.2d 805 (5th Cir. 1972). Moreover, we must conclude, given the multitude of individual issues involved in the pending cases, that plaintiff does not have a reasonable apprehension of liability in any one of them. This conclusion is strengthened by the absence of anything in the record indicating that any actions have been decided against plaintiff. Because of the large number of cases filed against plaintiff, plaintiff may very well ultimately lose some of them. But such abstract liability cannot be the basis for a definite and concrete controversy. We cannot issue a declaratory judgment as to plaintiff's right to indemnity in abstract terms. Any declaratory judgment as to the liability of any defendant would have to make reference to specific cases, because only specific cases with concrete sets of facts will lend the requisite controversy to the declaratory relief. Because we cannot conclude that plaintiff has a reasonable apprehension of liability in any pending case, a declaratory judgment would be premised on a hypothetical set of facts not specifically applicable to a particular pending case. Thus no case or controversy exists within the meaning of Article III of the Constitution.

Defendants' motion to reconsider our conclusions regarding personal jurisdiction is denied. The motion is also denied as to plaintiff's right to indemnity for liability already incurred. The motion to reconsider is granted as to declaratory relief for indemnity in cases pending or not yet filed

and plaintiff's claims in respect to those cases are dismissed.