In the Matter of VECCO CONSTRUC-
TION INDUSTRIES, INC., Debtor.

VECCO CONSTRUCTION INDUSTRIES,
INC., Plaintiff,

v.

CENTURY CONSTRUCTION COMPANY
OF WASHINGTON, D. C.,
INC., Defendant.

Bankruptcy No. 79–224–A.

United States Bankruptcy Court,
E. D. Virginia,
Alexandria Division.

April 15, 1982.

Craig B. Dunbar, Gregory J. Miner, Arlington, Va., for Century Const. Co. of Washington, D. C., Inc.

Jack Rephan, Stanley J. Samorajczyk, Fairfax, Va., for Vecco Const. Industries, Inc.

Herbert L. Karp, Alexandria, Va., for Creditors' Committee.

## MEMORANDUM OPINION

MARTIN V. B. BOSTETTER, Jr., Bankruptcy Judge.

The plaintiff, Vecco Construction Industries, Inc. ("Vecco") has moved for summary judgment of its objection to claim and counterclaim against defendant, Century Construction Company of Washington, D. C., Inc. ("Century"). It is evident that factual disputes exist to such an extent that this Court can consider for purposes of summary judgment only the issue of Century's standing to maintain its claim.

The project on which Century was the general contractor and Vecco the concrete subcontractor is known as The Flour Mill in Washington, D. C. Century terminated Vecco before Vecco had completed its work on The Flour Mill project. Century later filed a proof of claim in Vecco's Chapter XI proceeding in the amount of $3,250,000.00. Of this total, Century attributed $1,150,-

000.00 to cost of completing the concrete work and $2,100,000.00 to delay damages. These amounts were later amended to $3,721,579.89, broken down as $1,565,114.89 for the concrete cost overruns and $2,156,-465.00 for delay damages [1]. Century, however, admits that the owner has reimbursed it for the concrete cost overruns. It further admits that its assertion of a claim for delay damages is based only upon a letter from the owner stating that the owner would look to Century for reimbursement of the concrete cost overruns and the delays. The owner has taken no further action to assert its claim [2]. Century's president, Edward M. Crough, Jr., stated that Century planned to await the outcome of this litigation before deciding whether to meet the demands of the owner's letter.

In a recent decision, the Supreme Court restated the elements required for a party to have standing to sue. *Duke Power Company v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). First, there must be a distinct and measurable injury to the party claiming standing, separate from any suffered by the general public. *See also, Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Second, the claimant must be able to trace the harm to the other party's conduct or be able to show "but for" causation. *See also, Village of Arlington Heights v. Metropolitan Housing Development Corporation,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Third, the court, by the exercise of its powers, must be able to redress the claimed injuries. This element arises from the constitutional requirement of an actual case or controversy. *See also,* United States Constitution, Article III. The injury requirement is essential to establish that the claimant has an interest in the outcome. Century has alleged injury in its pleadings and bears the burden of proof to substantiate such an injury. *See, Citizens Concerned for Separation of*

---

1. Vecco's counterclaim is for $404,624.04 with interest from May 5, 1979.

2. Although Century admits to being reimbursed by the owner for the concrete cost overruns, it claims that $600,000.00 remains unpaid from the project as a whole. It is unclear how much of this amount is normal retention, but Century asserts that its general contractor's fee of $360,000.00 has not been paid.

*Church and State v. City and County of Denver*, 628 F.2d 1289 (10th Cir. 1980).

Century alleges that Vecco's default caused a delay which will make the general contractor liable to the owner, should the owner decide to sue. Thus, the question arises whether the potential of a law suit by a third party is sufficient to constitute an injury in fact. It has been held that a suit to preclude the possibility of future harm does not satisfy the injury in fact requirement. *Young v. Klutznick*, 652 F.2d 617 (6th Cir. 1981).

Assuming that Century seeks to pursue its claim on an indemnity theory, Century relied heavily on Section 7(f) of its contract with Vecco as the basis for its claim for the concrete cost overruns. Section 7(f), after reciting Century's right to complete the job in the event of possible failure of Vecco to do so, reads in pertinent part:

> "The expense incurred by the Construction Manager (Century) . . . either for furnishing materials or finishing the work, any damage incurred through such default, shall be chargeable to the Contractor (Vecco)."

The thrust of Century's argument is that it "incurred" the expense of completing Vecco's work and, based on the language of Section 7(f), may now assert a claim against Vecco for the amount of the cost overruns. This, in spite of the fact of having already received payment from the owner.

In opposing Century's argument, Vecco relies upon the case of *Mission Marble Works v. Robinson Tile & Marble Company*, 20 F.2d 14 (9th Cir. 1927). In *Mission Marble Works*, as here, the general contractor attempted to pass through to the subcontractor a delay damages claim of the owner. The Court in *Mission Marble Works* refused to consider the claim because the owner was not a party to the suit. The question of damages between the owner and the general contractor remained unsettled and the general contractor had failed to establish that the owner ever would claim damages against him. The court ruled that the general contractor could claim damages against the plaintiff only on the basis that it had

paid or would be compelled to pay damages to the owner. In support of this ruling, the court quoted a long-standing rule of law that a potential indemnitee " 'must prove actual payment, or that which the law considers the equivalent of actual payment; a mere liability to pay not being sufficient. . . .' " *Mission Marble Works, supra*, at 17 (citation omitted).

Where the parties have entered into a written contract for indemnity, the common law rule is that there can be no recovery until the indemnitee has made payment, is compelled to pay, or has suffered an actual loss or damage against which the covenant of the contract runs. 41 Am.Jur.2d, *Indemnity*, §§ 29, 30. Only where the contract for indemnity provides for recovery against mere liability by express terms to that effect may the indemnitee bring action prior to making payment. Even under such a contract, action for recovery is improper before liability has been legally imposed. 41 Am.Jur.2d, *Indemnity*, § 31. Where the indemnity arises only from an implied contract, the right to recover does not arise until the occurrence of actual loss or damage. Simple imposition of liability does not trigger a right to recovery where indemnity arises from an implied contract or by operation of law. 41 Am.Jur.2d, *Indemnity*, § 32.

This is the established rule in many jurisdictions. In *Mack Trucks, Inc. v. Bendix-Westinghouse Automotive Air Brake Company*, 372 F.2d 18 (3rd Cir. 1967), *cert. denied*, 387 U.S. 930, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967), the Third Circuit, applying Florida law, stated that a cause of action for indemnity arises when the claimant sustains the loss, an event marked in that case by the payment by Mack of a judgment against it. A New York court, exercising admiralty jurisdiction, ruled that a "cause of action for indemnification accrues . . . when the judgment or settlement has been paid." *Prudential Lines, Inc. v. General Tire International Company*, 440 F.Supp. 556 (S.D.N.Y.1977). Another court, applying Michigan law, stated the rule as follows:

"The doctrine of indemnity rests on the proposition that when one is compelled to pay money or discharge a duty which in justice should have been paid or discharged by another, the payor may recover from the other unless barred by the wrongful nature of his conduct."

*Brown v. International Union, UAW*, 85 F.R.D. 328, 334 (W.D.Mich.1980).

Another New York court described the right to indemnity as "derivative". A right that "remains inchoate until settlement or resolution of the primary action." *Kantlehner v. United States*, 279 F.Supp. 122 (E.D. N.Y.1967). The rule is the same in Illinois. In a recent case there, a manufacturer of insulation products had been forced to pay compensation to workers with diseases contracted from exposure to asbestos used in the manufacturer's products. The manufacturer, in turn, sued its asbestos supplier for common law indemnity. The manufacturer also requested declaratory judgment of its right to indemnity for all future liability in suits still pending and any future suits not yet filed. *Forty-Eight Insulations, Inc. v. Johns-Manville Products Corporation*, 472 F.Supp. 385 (N.D.Ill.1979). The Court, applying Illinois case law, refused to approve any right to indemnity in either the pending suits or those not yet filed. *Id.* at 395. That court held further that the manufacturer's request for a determination regarding both the pending and the possible future suits did not meet one of the crucial tests for federal court jurisdiction, that is the existence of an actual case or controversy as required by Article III of the Constitution. *Id.* Another well established reason for this rule is that the court which assumes jurisdiction must be able by the exercise of its powers to remedy or redress the injuries claimed. *See, Duke Power Company v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978).

Century attempts to distinguish *Mission Marble Works, supra*, from the case at bar on the basis that in *Mission Marble Works* there were no claims of damage by the owner, whereas there are such allegations asserted in the instant case. However, unproved allegations are all that this case presents. Century alleges that it "incurred" concrete cost overruns as a result of Vecco's departure from the job site. It admits however, that it has been reimbursed in full by the owner for these overruns. Until and unless the owner, in fact, seeks recovery from Century for these cost overruns, it is difficult for this Court to ascertain that Century has been damaged or even has been put in a position of liability. The same is true for the "delay damages" which may never be asserted by the owner instituting legal action against Century. There are, as Century noted in argument, factual distinctions between *Mission Marble Works* and the case here. Yet, the statement of law regarding accrual of a claim for indemnity in *Mission Marble Works* is a valid one.

This Court finds that Century has suffered no actual damage because it has been reimbursed by the owner for the concrete cost overruns and has not, to date, suffered a judgment or otherwise paid or been compelled to pay either for those cost overruns or for any delay damages. Thus, since Century's claim against Vecco arises from an implied contract of indemnity, Century's right to recover from Vecco remains inchoate until Century pays or is compelled to pay the owner for those items.

Vecco's motion for summary judgment on its objection to Century's claim will be granted as to concrete cost overruns and delay damages.

An appropriate Order will enter.